## JASPER COUNTY ELECTRIC RAILWAY COMPANY v. CURTIS et al., Appellants.

### Division One, February 5, 1900.

1. **Contract:** LOCATION OF STREET RAILWAY. Where the contract was to convey a right of way fifty feet wide "being twenty-five feet wide on either side of center line of said electric railroad, provided, how-ever, that said line will be so constructed as to pass twenty-five feet north of the old house," the word "line" means the right of way and not the track. So that if the south line of the right of way is only fifteen feet north of the old house, the contract was not com-plied with.

2. ————: PLEADING: PAROL VARIANCE. Plaintiff is not entitled to claim that it has complied with the contract, if the petition is based not upon the original contract, but upon the original contract as subsequently changed and modified by parol at the request and with the consent and agreement of defendants.

3. ————: ————: ————: ESTOPPEL. Estoppel must be pleaded if relied on as a bar to the defendant's defense.

4. ————: WRITTEN: ADDITIONAL AGREEMENTS: FRAUD. It can not be conclusively presumed that all the antecedent agreements of the parties were embodied in the written contract, in actions in equity to reform the contract, nor where the action is one on the contract and the defense is fraud in its procurement, nor where the defend-ant asked to have the contract canceled on the ground that it was procured by fraud.

5. ———: SPECIFIC PERFORMANCE: MISTAKE. Where a part of the agreement is omitted from the written agreement under a mistake, an equity court will not decree specific performance if such decree would be inequitable or deny to defendant the benefit which was the desideratum for the contract.

6. ———: ———: DECREE. The contract provided for the giving of the right of way to plaintiff railroad upon condition that the line did not come within twenty-five feet of the defendant's house. The defendant's reason for making such agreement was that he should forever have a five cent fare over the plaintiff's electric railroad, but this provision was not put into the written contract because the road's charter at that time provided that the maxium fare was to be five cents, and the defendant was led to believe that the charter could not be changed. Afterwards it was changed and the fare limit removed, and the plaintiff charged defendant a fare of ten cents, and seeks to do so yet, and also brings suit for specific performance to obtain a decree of title in the right of way. The railway was constructed within fifteen feet of the house, instead of twenty-five as the contract provided. *Held*, first, that the defendant could show by parol that the ten cent fare was, by reason of this mistaken belief, omitted from the written contract, and, second, that plaintiff could have no decree until it moved its track back beyond the twenty-five feet limit, and not even then unless it was willing to accept as a part of the decree a limitation for a five cent fare.

Appeal from Jasper Circuit Court.—*Hon. Joseph D. Perkins,* Judge.

REVERSED AND REMANDED (*with directions.*)

*Thomas & Hackney* for appellants.

(1) The agreement made by Fitch, on behalf of the company, with the defendants, to give the defendants a five cent rate to Carthage, was the inducement and consideration for the defendant's agreement to convey the right of way and the six-acre tract. It is competent for the defendants to show this agreement by parol. Aull Sav. Bank v. Aull, 80 Mo. 199; Hines v. Wilcox, 33 S. W. Rep. 914; Chambers v. Livermore,

15 Mich. 381; 2 Pomeroy's Eq. Jur., sec. 860; 22 Am. and Eng. Ency. of Law, 939; Stoutenburgh v. Tompkins, 9 N. J. Eq. 332; Veth v. Gierth, 92 Mo. 104; Hill v. Rich Hill Ming. Co., 119 Mo. 28; Quinn v. Roath, 37 Conn. 16. (2) The refusal of the Electric Railroad Company to give the defendants a five cent rate, rendered the representation made by Fitch untrue, and it would be inequitable to compel the defendants to part with their property, under contracts made on the faith of this representation. Isaacs v. Skrainke, 95 Mo. 517; 2 Pomeroy's Eq. Jur., sec. 860. (3) The provision in the contract for the right of way, requiring the right of way to be at least twenty-five feet north of the old house, was undoubtedly put in for the purpose of leaving room for passage between the right of way and the house. This was a provision that the defendants had the right to make, and ought to be respected by the courts.

*McReynolds & Halliburton* for respondent.

(1) The contracts are binding on defendants. The plaintiff having performed the conditions of the contracts they will be enforced against the defendants. Ivory v. Murphy, 36 Mo. 534; Luckett v. Williamson, 34 Mo. 395; Andrews v. Scott, 94 Mo. 637; Dougherty v. Hard, 91 Mo. 161; Sifton v. Hargar, 71 Mo. 610; West v. Bundy, 78 Mo. 407; Mastin v. Grimes, 88 Mo. 478; Johnston v. Tripp, 33 Fed. Rep. 530; Butler v. Thompson, 92 U. S. 412. (2) The distance of the road from the houses is in compliance with the contract, the language being: "That the said line will be constructed so as to pass not less than 25 feet to the north of the old house and not less than 50 feet north of the new house." It is the road bed that is constructed and not the right of way, and the language should be construed in its natural and ordinary sense. Goode v. St. Louis, 113 Mo. 257; Ellis v. Harrison, 104 Mo. 270; Johnson Co. v. Wood, 84 Mo. 489; Ellerbe v. Barney,

119 Mo. 632. (a) And if there was any doubt about it, the acts of defendants would fix it in favor of plaintiff. The line was changed at the request of Curtis and he and his wife were there during the time of the construction, he helping in the work and also as agent for his wife and neither raised an objection to the present location. Dentman v. Kilpatrick, 46 Mo. App. 624; Moser v. Lawrence, 38 Mo. App. 85; Ridge v. Transfer Co., 56 Mo. App. 133. (b) And defendants having stood by and seen the plaintiff construct the road on its present location are estopped from saying that it is not located as agreed. Leete v. Hart, 115 Mo. 203; Spurlock v. Sproute, 72 Mo. 503; Deberry v. Wheeler, 128 Mo. 84. (3) This being a suit upon written contracts and it appearing that defendants fully understood their contents and no fraud or deceit practiced in obtaining them, they contain the whole contract, and defendants will not be permitted to show that there were other considerations for the signing than expressed in the contracts, and can not rely on an oral promise. Wood Mc'h Co. v. Bobbst, 56 Mo. App. 427; State ex rel. v. Hoshaw, 98 Mo. 858; Robinson v. Jarvis, 25 Mo. App. 421; Tracey v. Union Iron Works, 29 Mo. App. 342; Jas. T. Hair Co. v. Walmsey, 32 Mo. App. 115; Reed v. Nicholson, 37 Mo. App. 646; Conrad v. Fisher, 37 Mo. App. 352; Blakely v. Benecke, 59 Mo. 195.

MARSHALL, J.—This is a proceeding in equity to compel the defendants to specifically perform a contract to convey to plaintiff a right of way over the property of the defendants.

Prior to December 14th, 1894, the plaintiff was projecting an electric railroad from Carthage to Carterville or Webb City, and was seeking a right-of-way over private property therefor. The defendants, H. C. Curtis and Eva E. Curtis his wife, owned as tenants in common, each an undivided half of certain land in section number twelve, township twenty-

eight, range thirty-two, in Jasper county. On said date they executed an agreement, in writing, binding themselves, in consideration of the sum of one dollar and the construction by plaintiff of an electric railroad over their lands, to convey to plaintiff a right-of-way fifty feet wide, "being twenty-five feet wide on either side of center line of said electric railroad," over the defendants' land; "provided, however, that the said line will be constructed not less than twenty-five feet to the north of what is termed the old house, and not less than fifty nor more than two hundred feet north of the new house, located near the south line of the northwest quarter of the northeast quarter of said section," and also provided that the plaintiff should construct necessary crossings and cattle guards.

The petition alleges, " that said line of electric railroad was so constructed that the south line of the right-of-way provided for in said contract was fifteen feet north of the old house and the south line of the track of said road is thirty-five feet north of the old house, and was so constructed at the request and with the consent and agreement of defendant herein. That otherwise plaintiff had fully complied with the terms and conditions of said contract on its part and has constructed its electric railroad over said land and has the same now in operation." The prayer is for specific performance.

The answer is a general denial, and two principal specific defenses, to-wit, first, that contrary to the agreement the road was built less than twenty-five feet north of the old house and less than fifty feet north of the new house, and, second, that the contract was procured by plaintiff from them by fraudulent representations, in this, "that if defendants would execute said contract, said railroad company would make and give defendants a rate of five cents from their dwelling house to the city of Carthage and a rate of five cents to return;" and that the plaintiff agreed to give defendants said rate as an inducement and consideration for making the agreement; and, further,

that the plaintiff represented to defendants at and before the signing of the agreement that by the terms of its franchise it could not, and would not if it could, charge them a rate to exceed five cents from their house to Carthage and the same amount to return, and that defendants were induced by such representations not to insist upon such rate being embodied in the agreement. The answer then alleges a breach of the agreement, and that the plaintiff has persisted in charging a fare of ten cents each way. There is also an allegation that the plaintiff has not constructed the necessary crossings and cattle guards. The prayer of the answer is that the contract be declared void and that it be canceled.

The reply is a general denial and a special plea that the road was constructed as it is by the consent and agreement and at the request of the defendants; that the south line of the track is thirty-five feet north of the old house and the south line of the right-of-way is fifteen feet north of the old house.

On the 31st of December, 1894, defendants executed to plaintiff an agreement to give plaintiff a bonus of six acres of their said land in consideration of plaintiff constructing the electric railroad aforesaid as specified in the right-of-way contract of December 14th above referred to. The plaintiff assigned the bonus contract to Isaac Perkins, one of its directors, and he instituted a proceeding in equity to compel defendants to specifically perform that contract. The issues in that case are substantially the same as in this case. The facts will sufficiently appear in the opinion. The circuit court entered a decree for plaintiff in each case, divesting the title out of defendants and vesting it in plaintiff for a right-of-way, and in Perkins absolutely as to the six acres, and defendants appealed.

I.

It is contended, first, that the centre of the track as laid is thirty-nine feet and four inches north of the old house, and

that this is a compliance with the terms of the agreement; that the agreement refers to the location of the track and not to the location of the right-of-way because the contract provides "that the said line shall be constructed," meaning the track which was to be constructed and not the right-of-way which was not constructed; that if this is not so, then, second, the right of way was to be fifty feet wide, that is twenty-five feet wide on each side of the centre of the track, and that deducting the twenty-five feet from the thirty-nine feet and four inches it leaves the south line of the right-of-way fourteen feet and four inches north of the old house, and that it was so constructed at the request and by the consent and agreement of the defendants.

It is perfectly plain that the first contention is untenable. The contract is to convey a right-of-way fifty feet wide, "being twenty-five feet wide on either side of centre line of said electric railroad . . . . . . . provided, however, that the said line will be constructed so as to pass not less than twenty-five feet north of what is termed the old house and not less than fifty nor more than two hundred feet north of the new house." The line to be constructed here referred to evidently means the south line of the right-of-way, and this was plainly intended so as to reserve to the defendants a space of twenty-five feet between the old house and the right-of-way granted to plaintiff to afford access to their house.

That this was the understanding of the plaintiff is demonstrated by the allegations of the petition and of the reply. In the petition it is stated, " that said line of electric railroad was so constructed that the south line of the right-of-way provided for in said contract was fifteen feet north of the old house and the south line of the track of said road is thirty-five feet north of the old house, and was so constructed at the request and with the consent and agreement of defendants herein. That *otherwise* plaintiff has fully complied with the terms and conditions of said contract on its part," etc.

In the reply it is alleged, as a defense to the defendants' plea that the line of the right-of-way was not located as the contract specified, "that it constructed the said road across said land of defendants at the point where it is now situate at the request and by the consent and agreement of defendants; that said road was so built and constructed that the south line of the railroad track is thirty-five feet north of the old house and the south line of the right-of-way fifteen feet north of the old house and that said construction in that place and manner was by consent and agreement and at the request of said defendants."

The averments of the petition clearly show that the pleader construed the agreement to mean that the south line of that which was granted to the plaintiff should be twenty-five feet north of the old house, and that if he declared on the contract and alleged compliance on the plaintiff's part with its terms, the plaintiff would fail in the action, for the pleader alleged the location of the track and the right-of-way at a specified place and averred that it was so located at the request and with the consent and agreement of the defendants—not in accordance with the terms of the contract—and then averred that "otherwise" it had fully complied with the terms of the contract—the word "otherwise" referring obviously to the location of the right-of-way and of the track at a place different from that required by the contract.

In other words, the petition is based not upon the original contract, but upon the original contract as subsequently changed and modified by parol at the request and with the consent and agreement of the defendants. The same is true of the reply. Under these pleadings there is no such issue presented as that now contended for, that the contract meant that the line to be constructed twenty-five feet north of the old house referred to the track and not the right-of-way. On the contrary, the petition and reply clearly excluded any such

contention and was notice to the defendants that plaintiff intended to rely upon a parol modification of the terms of the contract as to the location of the right-of-way and track both at the place where they were respectively located. By so pleading the plaintiff cut off the defendants' right to object that the plaintiff could not recover because it had not proved compliance with the terms of the contract, and likewise cut itself off from claiming that it had so complied therewith. The first contention of the plaintiff is therefore untenable under the pleadings. It is also clearly untenable under the contract.

The plaintiff must stand or fall upon the issue tendered and joined in this behalf, that the right-of-way and track were located as they are at the request and with the consent and agreement of the defendants.

The superintendent of the plaintiff company testified on behalf of the plaintiff, that when he was locating the road Mr. Curtis objected that it was too close to both houses; that he claimed it was as far away from them as the contract called for, and Mr. Curtis admitted it but said it was only fair to him to change it and that he did so and thereupon Mr. Curtis said it was located right where he wanted it and that he was satisfied, but he could not and would not say how much it was changed —whether two feet or more—from the place he started to locate it.

Kennedy, the contractor for plaintiff, testified on behalf of defendants that when they reached the Curtis place, Mr. Fitch, the superintendent, was placing the grading stakes and Mr. Curtis came out and said to Mr. Fitch, "He is too close to my house . . . . . . . you were to keep fifty feet away from my house." They were then in front of the new house and were referring to it; nothing was said about the old house. Mr. Fitch moved the stakes about two feet but the witness could not say whether they were moved to the north or the south.

George Parke testified on behalf of the plaintiff in rebuttal that he was the head chainman of the surveying corps

that located the road; that at first the line was run through Mr. Curtis' driveway gate, and Mr. Curtis objected, so the line was changed about twelve feet to the north so as to miss his yard entirely; that the change left a distance of fifty feet between the house and the right-of-way; that Mr. Curtis said nothing more about it afterwards; that he did not know about the distance from the old house.

Ed. Hesser an employee of plaintiff testified for plaintiff, in rebuttal, that Mr. Curtis' said he was satisfied with the location as to the new house after it was changed so as not to run through his drive way.

Mr. Curtis testified that when Mr. Fitch was locating the road he told him that it was too close to the house; that, "you know you were not to get within fifty feet of the new house and twenty-five feet of the old house, and I said I couldn't hardly get out of my wagon between the new house and the road way or right-of-way. I told him if the company kept it there, there might be no trouble, but I wanted it set over on that account;" that he never consented to locating the road as it was with reference to the old house; that they changed the location in front of the new house but not in front of the old house.

The testimony on both sides, therefore, tends to show that as it was first proposed to be located the road would run through the front yard of the defendant's new house, and that upon objection by Mr. Curtis that it was too close to his house, and that the contract was that it should be at least fifty feet distant from the new house and twenty-five feet distant from the old house, the plaintiff changed the route so as to make it at least fifty feet from the new house, whereupon Mr. Curtis expressed himself satisfied as to that, and no issue is made with respect to the location as regards the new house. It was not changed so as to be at least twenty-five feet from the old house, and the evidence wholly fails to sustain the averments of the petition and the reply that the south line of the right-of-

way was located fifteen feet from the old house and the south line of the track was located thirty-five feet from the old house, at the request or with the consent and agreement of the defendants. There is no substantial evidence of any such request, consent or agreement.

It is insisted however that the defendants are estopped from setting up such a defense because they both saw the road located where it was in reference to the old house and neither objected to it at the time, and that Mr. Curtis even went so far as to assist in the construction of the road. There is evidence tending to support this contention, but the trouble with the plaintiff here is that no estoppel was pleaded or relied on in the trial court, and hence there is no issue joined in the case which such evidence would tend to support. The petition is founded upon an express parol modification and alteration of the original contract, and the reply follows the same lines, at the request and with the consent and agreement of the defendants. There is not even the suspicion of an intention to be gathered from the pleadings that an estoppel would be relied on. Having declared upon an express contract as to the location in front of the old house, the plaintiff must stand or fall on that issue. The evidence does not support the declaration, and therefore the case must fail. For this reason the judgment of the trial court must be reversed.

## II.

The defendants charge that the contract was procured by fraudulent representations and inducements, that is, that under its franchise the plaintiff was only allowed to charge a fare of five cents between defendants' house and Carthage, and that it would not charge any more if it could; whereas it has always charged ten cents therefor. The reply denies these averments.

The evidence supports the averments of the answer that

such representations were made by the plaintiff's officers at the time of and before the execution of the contracts granting the right-of-way and giving the bonus. Mr. Fitch himself does not meet or answer the charge squarely. He says he made no such agreements or statements and that he was very careful not to make any statements as to the fare to be charged because he did not know until a few days before the road was begun to be operated what the fare would be. Yet he admits that the original charter of the company did limit the fare from Carthage to the Park (which was some three miles beyond the defendant's place) to five cents, and from the Park to Carterville or Webb City to five cents, and that this was afterwards changed by getting the city council to strike out that limitation in the franchise and to leave it optional with the company how much it would charge. The plaintiff also seeks to charge the defendants with notice of this change in the franchise, by showing that it was published in the "Press" at Carthage, which paper was read by the defendants. It is nowhere shown by the testimony in this case when this change in the plaintiff's franchise was made—whether before or after the contracts for the right-of-way and for the bonus were executed. If it was afterwards, it would have no effect upon the rights of the defendants, for it could not be tolerated that a company could procure rights-of-way and bonus from the people for its road upon the faith of a charter which limited the rate of fare which the company could charge, and then procure a repeal of the limitation on the fare, and hold on to the benefits it had received from the people and at the same time charge whatever fare it saw fit. The fare to be charged was a material and essential element in the benefit the people were to get in return for their gifts of the right-of-way and of the bonus.

The representations and agreements as to the rate of fare are clearly and conclusively proved by the testimony of Mr. and Mrs. Curtis, Mr. Ropp and Mr. Stickney, and it needs no testimony to show that the rate of fare was an important

matter to those who gave the right-of-way and the bonus to the company. If the answer had contained a count asking that the contracts be reformed so as to secure to the defendants a five cent fare as a part of the consideration to them for executing the contracts, there can be no doubt that upon the evidence presented by this record, it would have been the duty of the court to grant that relief. Upon the retrial of this case, if leave to so amend is asked, it should be granted.

It is insisted however that this contract is in writing, and that it is conclusively presumed that all the agreements of the parties made before the contract was executed were embodied in the writing, and hence nothing which antedated the contract can be added to its terms, by parol. This is ordinarily true. But it is not true in actions in equity to reform a contract nor is it true where the defense to an action on the contract is fraud in its procurement, or where it is asked to have the contract canceled by a court of chancery on the ground that it was procured by fraud, which is the plea here. Under the answer here interposed the court would not have been warranted in cancelling the contract because the company had violated a simple agreement, not embodied in the contract, to charge only five cents fare. Neither could it have canceled the contract because of fraudulent representation as to the limit on the fare provided for in its franchise, for the testimony shows that there was such a limit in its franchise at the time the representation was made, and hence the representation was not false or fraudulent. This however is a suit for specific performance, which it is not the absolute right of the plaintiff to demand, but rests in the sound judicial discretion of the court to grant or deny as upon all the facts and circumstances of the case would be equitable. As was well said in Hill v. Rich Hill Coal Mining Co., 119 Mo. l. c. 28, "Such an agreement will not be enforced, if the decree would produce injustice between the parties, or where it would be inequitable under all the circumstances. For this reason it is that a court of equity will permit

a party to defend himself by evidence to resist a decree, where a plaintiff would not be permitted to make out his case by like evidence. 2 Story on Equity Jurisprudence (13 Ed.), secs. 769, 770; Veth v. Gierth, 92 Mo. 97."

In Stoutenburgh v. Tompkins, 9 N. J. Eq. l. c. 335 it is said: "The defendant relies upon the general ground, that it would be inequitable and unjust, under all the circumstances of the case, to compel him specifically to perform this agreement. This is a good defense. The court will not become an instrument of injustice; and if the case presented is such, that it would be unconscientious to grant the complainant the relief he seeks, and repugnant to a just sense of right between man and man, the court will refuse its aid." And the court quotes and adopts the rule laid down in 2 Story, sec. 742: "The exercise of this branch of equity jurisprudence is not a matter of right in either party; but it is a matter of discretion in the court; not indeed of arbitrary or capricious discretion, dependent upon the mere pleasure of the judge; but of that sound and reasonable discretion, which governs itself, as far as it may, by general rules and principles, but at the same time, which withholds or grants relief, according to the circumstances of each particular case, when those rules and principles will not furnish any exact measure of justice between parties." The learned chancellor in that case pointed out that while parol evidence is not admissible to vary, contradict or control a written instrument, still, a court of equity, "must necessarily exercise much more liberality, in admitting evidence in order to reach the equity of the case, than would be allowed by a court of law. It is vain to say a court of equity will refuse its aid to compel a party to do what a conscientious man ought not to ask him to do, under all the circumstances of the case; and yet, by a strict application of a principle of law, forbid his proving the circumstances which establish the hardship and inequity of the case." The chancellor then concludes by saying: "In vol. 2, part 1, Leading Cases in Eq. 514, the prin-

ciple, as deduced from a large number of authorities there cited, is said to be, that a defendant, in a bill brought to enforce a specific performance, is not exempted from the ordinary rules of evidence, nor entitled to vary a written contract by parol, without showing fraud or mistake, to justify the variation.    But it is equally well settled, that specific performance is discretionary with courts of equity, and a defendant will generally succeed in procuring a dismissal of the bill, if he convinces the court that the exercise of the jurisdiction will be inequitable under the circumstances."

Mr. Pomeroy, 2 Pom. Eq. Jur. (2 Ed.), sec. 860, states the rule to be:    "The equitable remedy of the specific enforcement of contracts, even when they are valid and binding at law, is not a matter of course; it is so completely governed by equitable considerations that it is sometimes, though improperly, called discretionary; it is never granted unless it is entirely in accordance with equity and good conscience.    It is therefore a well-settled rule, that in suits for the specific enforcement of agreements, even when written, the defendant may by means of parol evidence show that, through the mistake of both or either of the parties, the writing does not express the real agreement, or that the agreement itself was entered into through a mistake as to its subject-matter or as to its terms.    In short, a court of equity will not grant its affirmative remedy to compel the defendant to perform a contract which he did not intend to make, or which he would not have entered into had its true effect been understood.    What is thus true of mistake is equally true of a defense based upon fraud or surprise.    Whenever the defendant's mistake was, either intentionally or not, induced, or made probable or even possible, by the acts or omissions of the plaintiff, then, on the plainest principles of justice, such error prevents a specific enforcement of the agreement. Such co-operation by the plaintiff, however, is not at all essential.  A mistake which is entirely the defendant's own, or that of his agent, and for which the

plaintiff is not directly or indirectly responsible, may be proved in defense, and may defeat a specific performance. This is indeed the very essence of the equitable theory concerning the nature and effect of mistake. A mistake thus set up by the defendant is not merely a ground of defense of dismissing the suit. If the plaintiff alleges a written agreement, and demands its specific performance, and the defendant sets up in his answer a verbal provision or stipulation, or variation omitted by mistake, surprise, or fraud, and submits to an enforcement of the contract *as thus* varied, and clearly proves by his parol evidence that the written contract modified or varied in the manner alleged by him constitutes the original and true agreement made by the parties, the court may not only reject the plaintiff's version, but may adopt that of the defendant, and may decree a specific performance of the agreement with the parol variation upon the mere allegations of his answer, without requiring a cross-bill. The court will either decree a specific execution of the contract thus varied by the defendant, or else, if the plaintiff refuses to accept such relief, will dismiss the suit."

Fry on Specific Performance (3 Ed.), sec. 721 et seq., says: "There being two parties to every contract, it follows that mistake may be: 1st, the mistake of the defendant alone; 2ndly, the common mistake of both plaintiff and defendant; or 3rdly, the mistake of the plaintiff alone. . . . . . . . Mistake may be of such a character as, in the view of a purely common law court, to avoid the contract on the ground of want of consent or of total failure of consideration. But equity does not confine the defense of mistake to these cases. The principle upon which it proceeds is this: that there must be a contract legally binding but that this is not enough—that to entitle the plaintiff to more than his common law remedy, the contract must be more than merely legal. It must not be hard or unconscionable: it must be free from fraud, from surprise, and from mistake: for where there is mistake, there is not that

consent which is essential to a contract in equity. . . . . . . . In some cases, mistake furnishes an absolute bar to specific performance: in other cases it affords no such ground, if the plaintiff be willing to make a reasonable compensation to the defendant for the mistake made: whether a given case falls within one or the other of these categories depends on all its circumstances."

In the case at bar the mistake was made by the defendant of not embodying in the contract the provision for a five cent fare. This was the true agreement and this feature was omitted from the writing because the defendants made the mistake of believing that because the plaintiff's franchise provided and limited the fare to that sum, it could not be afterwards changed, and hence there was no necessity of inserting such a provision in the contract. Of course the defendant was in error in believing that the rate limited by the franchise could not afterwards be changed. They have since learned that it can be done. But this does not alter the equities between the plaintiff and the defendants. The defendants gave the plaintiff a right-of-way and six acres of land, and the principal benefit to them was a five cent fare. The plaintiff seeks to enforce the portions of the contract which are beneficial to it, but to deny to the defendants the principal benefit their gift to the plaintiff was intended to secure to them. There is no equity in such a claim. If the plaintiff wants the benefits it must carry the burdens of the contract. The judgment of the circuit court in so holding was erroneous and is reversed.

The judgment below will be reversed and the cause remanded with directions to permit the defendants to amend their answer so as to ask that the contract be reformed by adding to it a clause that the plaintiff, its successors and assigns shall never charge more than five cents for a single fare between defendants' place and Carthage, and thereupon a decree for plaintiff shall be entered stipulating that within a time to be fixed by the court the track and right-of-way shall

be changed so that the south line of the right-of-way shall be at least twenty-five feet north of the defendant's old house, and said decree shall further contain the limitation of a five cent fare aforesaid. In case the plaintiff refuses to accept a decree on these terms, the bill must be dismissed. It is so ordered.

All concur.