### GLASGOW & HARRISON *vs.* COPELAND, TO USE OF MILNE.

1. Where there is any evidence tending to the proof of a fact, its sufficiency to establish that fact must be determined by the jury; therefore, in such a case, it is erroneous in the court to instruct the jury that the evidence is not *sufficient* to prove the controverted fact.

2. Though the holder of a bill of exchange, payable at any number of days after date, is not bound to present the bill for acceptance, but may wait until it becomes due, and then present it for payment, yet if he does present the bill for acceptance, and acceptance is refused, he must give notice to those parties to whom he means to resort for payment, or they will be discharged from all liability.

3. An endorser is entitled to notice of the dishonor of a bill, although the drawer may have had no effects in the hands of the drawee.

4. Evidence that a bill was transmitted to a party "*soon*" after protest for non-acceptance, and that, on receiving the bill, he *immediately* gave notice to an endorser, is not due notice to the latter.

APPEAL from the St. Louis Court of Common Pleas.

GAMBLE and BATES, *for Appellants.*

For the appellants, it is insisted—

1. That though the holder of a bill of exchange, payable at any number of days after date, is under no obligation to present the bill for acceptance, but may wait and present it for payment when it becomes due, yet if he does present it for acceptance, and acceptance is refused, he is under the same obligation to give notice of

*Glasgow & Harrison vs. Copeland, to use of Milne.*

the dishonor of the bill as if it had been payable after sight, and a failure to give such notice discharges the endorser.— Chitty on Bills, 197; Byles on Bills; 1 Peters' Rep., 25; see the point at page 35.

2. That though a promise to pay a bill after its dishonor will dispense with the proof of notice, yet it must be a real positive promise, or a clear acknowledgment of the debt, as a present subsisting obligation.— Chitty on Bills, 233, 239.

There was here no such promise or acknowledgment.

3. That the want of effects in the hands of drawee is no excuse for not giving notice to an endorser.— Chitty, 228.

Thus far the points are upon the failure to give notice of the non-acceptance of the bill.

On the question of notice of non-payment, the appellants make the following points:—

1st: That notice, being necessary to charge an endorser, is to be proved by the plaintiff, and is to be proved to have been given within the time allowed by law. — Chitty, 314.

2d: That the notice is to be shown to have been sent by the mail next after the protest, or if the party undertakes to give the notice in any other than the usual and authorized mode, the burden is on him to show that it was received as soon as it would have been by mail. (Chitty, 315.) If the parties reside in the same town, the notice must be left at the place of business of the party notified.— 10 Johns. Rep, 490; 11 *Ibid.*, 231.

3d: Smith & Carter, not being parties to the bill, had nothing to do with giving notice to those who were parties, so that any time could be allowed them for that purpose. A person who is a party, and receives notice of the dishonor of a bill, is allowed to give notice the next day to the previous parties, but there is no such time allowed to a stranger.— Chitty, 226, 227.

For any thing that appears in the evidence, Glasgow & Harrison might have received the notice by the same mail which brought notices to Smith & Carter, and were not notified as early as they might have been, because the notices came to Smith & Carter.

The court below ought, then, to have non-suited the plaintiff on the motion of the defendants, and after failing to do that, ought to have granted a new trial.


WILLIAMS, *for Appellee.*

#### POINTS FOR DEFENDANT.

1. Was it necessary to show that notice of protest for non-payment was *mailed* at Philadelphia, and when?

I contend, that it is not essential that notice be mailed. It may be sent by messenger, or in any way, provided it reach the party to be charged as speedily. — Story on Bills, 452; Bayley on Bills, 276; Rahm *vs.* Bank of Philadelphia, 1 Rawle, 335; Bancroft *vs.* Hall, Holt, 476.

If it had been mailed at Philadelphia, then it should and would necessarily have appeared at what time, an inquiry that does not here spring up.

The question, material in this case, is, when did notice reach the endorsers, and was that notice within reasonable time?

The holder lived in Philadelphia; the endorser at St. Louis. The proof shows that it required ten days for mail-passage between the two cities; and Carter proves that he put notice to the endorsers into the post-office on the tenth or eleventh day, at farthest. Was this within reasonable time?

It is not essential that notice be mailed, if mailed at all, on the same day of protest, although the post may have left on the same day. The next post is in time, if it shall be three days after protest.—Bayley on Bills, 262; 265; Chitty and Story ; Wright *vs.* Shawcross, Barn. and A., 501 ; Hawkes *vs.* Salter, 4 Bing., 715.

It follows, then, that notice on the eleventh, twelfth, or even the thirteenth day after protest at Philadelphia, would have fixed the endorsers at St. Louis. Notice was put into the post-office at St. Louis, by Carter, on the *tenth* or *eleventh* day.

2d: Should Carter have served *personal* notice on endorsers, instead of sending through the post-office?

The rule of law is, that when a party to be charged resides in the same place with the holder, personal service of notice is necessary, but it is otherwise when he lives out of the same town or city.— Story on Bills, 452, sec. 328 ; Bayley on Bills, 277.

The most that can be said is, that reasonable diligence should be used in all eases to make the notice effectual, and it should appear that notice is received by the endorser, or, from the evidence, it should be fairly inferred by the jury that notice was received. This is sufficient to charge the endorser.—Story on Bills, 333; United States *vs.* Carneal, 2 Peters, 549; Bank of the United States *vs.* Corcoran, 2 Peters, 121.


Tompkins, *Judge, delivered the opinion of the Court.*

Peter Copeland, suing for the use of George Milne, brought this suit against James Glasgow and James Harrison, as the endorsers of a bill of exchange.

The declaration states the bill to have been drawn on the first day of March, 1842, payable six months after date, by one James Smith, on Craig, Bellas & Co., of Philadelphia. There were four endorsors, of whom the defendants were the second. Judgment was given for the plaintiff, and, to reverse it, Glasgow & Harrison prosecute this appeal.

The testimony of the plaintiff shows that the bill was protested for non-payment on the third day of September next after the date; and the witness states, that on the fourteenth day of September, or on the previous day, the firm of Smith & Carter, of which the witness was one, received notices of the protest for non-payment for the various parties on the bill, in particular, a notice for the firm of Glasgow & Harrison.

It appears also on the record, that this bill was, on the 19th day of April, 1842, protested for non-acceptance, and in reference to this protest the same witness

says—"That the bill was transmitted to the said firm of Smith & Carter, soon after its protest for non-acceptance; that immediately after its receipt, he waited upon Glasgow & Harrison at their place of business in St. Louis, and intimated that the acceptance of said bill had been refused, and exibited the bill and its protest to them; that he had subsequent interviews with them, particularly with James Glasgow; that Glasgow stated, that effects which formed the consideration of the bill had been sent to the drawees at Philadelphia, and that if the bill was again presented to them for acceptance, it would be honored; that on this information, the bill was again sent to Philadelphia, and acceptance again refused." The record then states, that "*this being all the evidence,*" "the defendants, by their counsel, prayed the court to instruct the jury that the plaintiffs had given no evidence *sufficient to hold the defendants liable.*" The sufficiency of evidence properly belongs to the jury to decide on. If any evidence had been given on which the jury could find for the plaintiff, this instruction could not, with propriety, be given. A new trial was also moved for on the common-place reasons. It was not necessary to present this bill for acceptance. (See Chitty on Bills, 8th edition, p. 299.) If, however, a bill be in fact, though unnecessarily, presented, and acceptance refused, &c., notice should be immediately given to the persons to whom the holder means to resort for payment, or they will, generally, be totally discharged from their respective liabilities. (Chitty on Bills, 354; 1 Peters, 35.) The defendant, appellant here, is entitled to notice as endorser, although the drawer may have had no effects in the hands of the drawee.—Chitty on Bills, 357.

It was proved in this cause that the usual time for the mail to pass from Philadelphia to St. Louis is ten days, and the notice should have been put into the mail on the next day after protest.—Chitty, 367.

But the witness says the bill was transmitted to Smith & Carter, of St. Louis, (of which firm he was one,) *soon* after its protest for non-acceptance, and that he, immediately after its receipt, informed Glasgow & Harrison of the protest. It is proper here to remark, that the meaning of the word "*soon*" is relative. The day of trouble soon comes, if it come even in a week, a month, or, indeed, if it ever come; an inattentive and idle man might suppose he gave notice *soon* after the protest, if he did it in a week even. So that, if we even grant that the witness gave the notice to Glasgow & Harrison on the same day, (as he seems to intimate by using the word *immediately*,) yet still it cannot be called due notice of the protest for non-acceptance. The plaintiff may then be said to have given no notice of the refusal to accept, or of the protest for non-acceptance; and the Court of Common Pleas ought then to have told the jury that no proof had been given to make the endorsers liable.

The counsel for the appellee seems to be sensible that this is most obviously the vulnerable point in his case, and to labor hard (as if with a view to conceal the weakest point) to prove that notice of protest for non-payment was duly given. He contends, that it is not absolutely necessary to send the notice by mail. He says, and says truly, "that when a party lives in the same place with the holder, personal service of the notice, or notice left at the house, is necessary; (10 Johnson, 490; 11 *Ibid.*, 231;) but it is otherwise when he lives out of the same town

or city: then he may either send it by mail or by a special agent. He chose to use both mail and special agent, and this special agent lived in the same city, and, in this respect, personated the appellee himself; and it became the appellee, if he had been in St. Louis, to leave this notice either at the residence or at the place of doing business of Glasgow & Harrison. It was not unaptly observed, that had this letter been directed to Glasgow & Harrison, from Philadelphia, they would have received it as soon as the witness did. But suppose they present themselves at the post-office on the day of the arrival of the eastern mail, and find no letter there, then they come not again till the arrival of the next mail, and lose the time betwixt the two arrivals; the effect is the same as if the plaintiff, appellee, had delayed putting the letter in the mail until the second day after the protest, with this aggravation, that although the appellee, by his attorney in fact, was present in the city of St. Louis, yet that attorney chose to throw the letter into the post-office, and expose the appellant to that risk of losing the notice which none but a non-resident can legally require him to incur. But it is useless to say any thing about the want of notice of non-payment, for, by failing to give notice of the protest for non-acceptance, the appellants are exonerated.

The judgment of the Circuit Court must be reversed.