Earl BEST, Sr. and Bonnie Best, Appellants,

v.

John J. CULHANE and Phyllis Culhane, Respondents.

No. 46472.

Missouri Court of Appeals, Eastern District, Division One.

Aug. 28, 1984.

James G. Rittenbaum, Louisiana, for appellants.

William C. McIlroy, Bowling Green, J. Rockne Calhoun, Louisiana, for respondents.

KELLY, P. Judge.

Dolan Company Sales, Inc., instituted this interpleader action seeking a determination as to which of the defendants, John J. Culhane and Phyllis S. Culhane, husband and wife, or Earl Best, Sr. and Bonnie Best, husband and wife, were entitled to 100 shares of Union Electric stock deposited with it as escrow agent pursuant to a Sales Contract on a home and 150 acre farm in Pike County, Missouri. The Bests filed an Answer to the Interpleader action admitting that they and the Culhane's had entered into a Sales Contract for the sale of the Pike County acreage, but denying the other allegations in said Petition for Interpleader. The Bests also filed a "counterclaim" against the Culhanes seeking specific performance of the Sales Contract for the purchase of the Pike County acreage.

The Culhanes filed a First Amended Answer to the Petition in Interpleader denying that they had entered into the Sales Contract with the Bests for the purchase of the Pike County Tract, admitting, however, that they had deposited the stock with Dolan, and that a dispute had arisen between the parties to the Sales Contract, and that they had demanded return of the shares of stock. They prayed for an order requiring Dolan to return the stock to them.

The Culhanes also filed an Answer to the Bests' "counterclaim" admitting that they had deposited the stock with Dolan, but denying all of the other allegations in Bests' "counterclaim" for specific performance. They further alleged that if the court should find a contract between them and the Bests, that by seeking damages in Count II of their "counterclaim"[1] the Bests had waived any rights to specific performance of the contract, that the Bests, as an inducement to cause them to enter into the contract, had misrepresented to them that 40 acres of the farm was tillable and 70 acres was for pasture, when in fact, this was not so and the Bests knew this and made said representations with the

intent to deceive and defraud them and that to enforce specific performance of the contract under these circumstances would be inequitable, unfair, and unjust.

After a bench trial the court found: that the Bests and the Culhanes entered into a valid contract for the sale of real estate on February 4, 1981; that the Culhanes executed a waiver of financing contingency on March 5, 1981, which constituted a ratification of the agreement of February 4, 1981, and waiver of any time objections; that on February 4, 1981, the Culhanes deposited with Dolan, as earnest money, 100 shares of Union Electric Stock; that on February 4, 1981, the Bests were seized of an indefeasible estate in fee in the real estate which was the subject of the contract; that the real estate was represented to contain 40 acres tillable and 70 acres of pasture and that Earl Best, Sr. furnished said figures to William Babbitt, the Bests' representative, whereas the real estate actually contained 18 acres tillable and 29 acres pasture; that the difference between the tillable acres and pasture acres as represented and as they actually exist is a substantial variance; that the Culhanes were not aware of the acreage difference until they received a letter from Charlie Wright on March 9, 1981, after the ratification of March 5, 1981; that the Culhanes attempted to and did verify this difference after March 9, 1981; that there was no credible evidence presented by the Bests that there was substantially more tillable or pasture land; that the Culhanes had a right, under the circumstances, to void the contract between themselves and the Bests; that the Culhanes were relying on income from the tillable acres and pasture acres, as represented by the Bests, to help pay for the real estate which was the subject of the contract of February 4, 1981; that the Bests did not notify the Culhanes of the intention to close the sale until after April 30, 1981, and were not fully ready to sell the property on May 4, 1981, as the abstract to the property was not extended

---

1. Count II of the "counterclaim" was not incorporated in the record on appeal because the

counts were separated and only the Specific Performance Count brought to trial.

and the delay in notifying the Culhanes of their intention to close was unreasonable; that the contract between the Bests and the Culhanes is not capable of being performed because there is not the 40 tillable acres and the 70 acres pasture as represented. The Bests' petition for specific performance was denied and dismissed and Dolan was ordered to return the 100 shares of Union Electric Company stock to the Culhanes.

 Our review of this judgment is governed by Supreme Court Rule 73.01 and *Murphy v. Carron*, 536 S.W.2d 30, 32[1, 2] (Mo. banc 1976) and its progeny. We must affirm the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. Furthermore, when the trial court judgment is challenged on the ground that it is "against the weight of the evidence" the reviewing court should exercise the power to set aside the judgment with caution and with a firm belief that the judgment is wrong. Conflicts in evidence are for the trial court to resolve and the facts must be taken in accordance with the result reached by the trial court. The trial court, when sitting as the trier of fact, may believe all, part or none of the testimony of any witness. *Trenton Trust Company v. Western Surety Company*, 599 S.W.2d 481, 483[3] (Mo. 1980).

Mr. and Mrs. Earl Best owned and lived on a 150 acre farm in Pike County, Missouri. In August, 1980, they listed the property with Dolan, a corporate real estate broker with sales offices in Pike County. The Bests were asking $182,000.00 for the property, including a ten room house, out-buildings, ponds and some open fields useful for growing crops and pasture. In the listing agreement prepared by Dolan the property contained 40 acres of tillable land, 70 acres of pasture, suitable for growing hay and the grazing by cows, and 30 acres of wooded land. These figures were furnished by Mr. Best to Mr. Babbitt of Dolan when preparing the listing contract. In fact,

only 18 acres of the tract was tillable and 29 acres was suitable for pasture. The listing agreement, including the erroneous figures, was shown to prospective purchasers and thus misrepresented the land uses.

The Culhanes entered into a Sales Contract for the purchase of the farm and the improvements therein on February 4, 1981, for a purchase price of $155,000.00. Mrs. Culhane had first viewed the property and the listing contract in August, 1980, while on a house tour for Dolan sales representatives, at which time she was a licensed real estate representative with Dolan.

According to the Sales Contract the Culhanes were to deposit with Dolan an "earnest deposit" of 100 shares of Union Electric stock valued at approximately $1,100.00. The Sales Contract also provided for contingency financing, but this provision was later waived by the parties to the contract in a separate writing dated March 5, 1981. The sale was to be closed on May 4, 1981.

Sometime around February 27, 1981, the Culhanes began to question the representations concerning the tillable and pasture acreage. Because they expected to use income from farming the land to help pay for the purchase of the farm, the acreage available for farming was an important factor in their decision to purchase the farm. In mid-March of 1981, the district conservationist for the United States Department of Agriculture, Soil Conservation Service, Charles Wright, wrote a letter to the Culhanes informing them that the farm contained only 18 acres of tillable and 29 acres of pasture. Frank Johnson, an adjoining land owner who had farmed the Best tract, confirmed the fact that the tillable acreage was 18 acres. At this point the Culhanes attempted to void the Sales Contract and on March 28, 1981, served notice on the Bests through Dolan that they were voiding the Sales Contract due to these acreage variances. Dolan cancelled the extension of the Best abstract on March 28, 1981. On April 12, 1981, Mrs. Culhane requested that Dolan return the stock it was holding as earnest money. Nevertheless, Dolan, on

April 30, 1981, notified the Culhanes that the Bests intended closing the sale on May 4, 1981, and on that date the Bests went to Dolan's office in Louisiana, Missouri, ready to close the sale. The Culhanes, however, went to the Pike County Abstract Company's office where the letter from Dolan told them the closing would take place to reclaim their stock. This lawsuit followed.

On appeal the appellants—the Bests—raise two points:

1) that the trial court erred because no substantial evidence supports the judgment of the trial court, the court erroneously applied and declared the law, and the judgment is against the weight of the evidence; and

2) that the trial court erred in denying specific performance because the acreage representations were not material to the contract, such representations were unreliable opinions, and the sellers failure to close on the closing date was excusable because of the buyers' repudiation of the contract.

■ Initially we point out that appellants' first Point Relied On preserves nothing for review because it fails to comply with the requirements of Rule 84.04(d), V.A.M.R. It is nothing but an abstract statement. This point does not state "wherein and why" there was no substantial evidence to support the trial court judgment. *Barber v. M.F.A. Milling Co.,* 536 S.W.2d 208, 211[13] (Mo.App.1976); *Tripp v. Harryman,* 613 S.W.2d 943, 950[12] (Mo.App.1981). Nor does the point state "wherein and why" the court erroneously applied and declared the law nor "wherein and why" the judgment is against the weight of the evidence. *Matter of Roth,* 603 S.W.2d 70, 71[1] (Mo.App.1980). All appellant did was restate the principle of review of bench-tried cases enunciated in *Murphy v. Carron,* supra, omitting therefrom that part of the opinion that said that when a trial court judgment is challenged on the ground that it is "against the weight of the evidence" the appellate court should exercise the power to set aside the judgment on that ground with caution and with

a firm belief that the decree or judgment is wrong. 536 S.W.2d l.c. 32.

We hold that appellant's first Point Relied On preserves nothing for this court to review on appeal.

Appellants contend that the misrepresentations concerning the amount of tillable and pasture acreage were not material misrepresentations but were mere opinions regarding non-material matters which the Culhanes had no right to rely on. They equate the statements in the listing contract, that there were 40 tillable acres and 70 acres of pasture, to "puffing."

■ Specific performance of a realty purchase contract is not a matter of strict right, but rests in the trial court's discretion. *Rockhill Tennis Club of Kansas City v. Volker,* 331 Mo. 947, 56 S.W.2d 9, 18[6] (Mo.1932). It has frequently been said that the equitable relief of specific performance does not issue as a matter of course, but only as a matter of grace, and that the grant of this relief rests in the sound discretion of the court in light of the conduct of the party seeking relief. *Houtz v. Hellman,* 228 Mo. 655, 128 S.W. 1001, 1006[8] (1910); *Durretts v. Hook,* 8 Mo. 271, 276[2] (1844); *Lancaster v. Simmons,* 621 S.W.2d 935, 942[11] (Mo.App.1981).

■ A "misrepresentation" is an assertion that is not in accord with the facts. *Restatement (Second) of Contracts,* § 159 (1979). A misrepresentation is material if it would be likely to induce a reasonable person to manifest his assent, or if the maker knows that it would be likely to induce the recipient to do so. *Restatement (Second) of Contracts,* § 162(2) (1979).

■ There can be little doubt from the evidence that the statements in the listing contract relative to the tillable acreage and the pasture acreage were not in accord with the facts. There was substantial evidence that these figures were furnished to Dolan by Mr. Best. There is a question whether the Bests came into equity with clean hands. In his treatise, *Equity Jurisprudence,* § 400 (4th Ed.1918), Pomeroy limits the application of this principle to

cases where the plaintiff's unconscientious actions relate to the subject matter of the lawsuit and where plaintiff's conduct in entering into the contract is ".... unconscientious or unjust, or marked by a want of good faith." *Pomeroy,* supra, § 399. The common law of Missouri also supports the "unclean hands" doctrine. In *Hackbarth v. Gibstine, et al.,* 182 S.W.2d 113, 118[6] (Mo.App.1944) this court said: "... a party coming into a court of equity seeking specific performance must have acted in good faith." In the case before us for decision the conduct of the appellants was unconscientious in allowing the acreage of tillable and pasture acreage to be misrepresented and such conduct may be characterized as "concealment of important facts even though not fraudulent." Said conduct relates to the subject matter of the lawsuit, i.e. the real estate. The trial court's denial of specific performance in this case, is not an abuse of discretion because the Bests came into court seeking equity with unclean hands.

 Another ground for the denial of specific performance in the circumstances of this case is that the evidence shows that the contract was entered into by mutual mistake. The Bests never farmed the land themselves; rather, their neighbor, Mr. Johns, farmed the land. Even were we to assume that the Bests did not know the actual acreage available for farming or pasturage, nevertheless, before furnishing these acreage figures to Mr. Babbitt of Dolan they should have ascertained the accuracy of those figures. Had they done so they would have learned that the acreage was not as stated. While the Culhanes may have been mistaken in relying on the figures set out in the listing contract, whether they were opinions or facts, their mistake was made possible, intentionally or not, by the acts or omissions of the Bests. On the plainest principles of justice, such error prevents a specific enforcement of the agreement. *Jasper County Electric Ry. Co. v. Curtis,* 154 Mo. 10, 55 S.W. 222, 226 (1900). The Supreme Court in *Jasper County Electric Ry. Co.,* supra, said further: "[t]hat there must be a contract le-

gally binding, but that this is not enough,—that, to entitle the plaintiff to more than his common-law remedy, the contract must be more than merely legal. * * * It must be free from ... mistake; for where there is mistake, there is not that consent which is essential to a contract in equity." *Jasper County Electric Ry. Co.,* supra, l.c. 226. Although the *Jasper* case is an old one, the principle it enunciates is the very essence of the equitable theory concerning the nature and effect of mistake, and the theory is as valid today as it was in 1900 when the *Jasper* decision was handed down. See: *Frederich v. Union Electric Light and Power Co.,* 336 Mo. 1038, 82 S.W.2d 79, 85 (Mo.1935); *Public Water Supply District of Pemiscot County No. 1 v. Fowlkes,* 407 S.W.2d 642, 649–650 (Mo. App.1966). The court in *Fowlkes,* l.c. 649, said: "The mistake of fact to justify refusal of specific performance need not be such as would avoid a contract at law, or even such as would justify recision or reformation of the contract."

 The trial court's judgment and the briefs on appeal present the issues so as to support a theory of misrepresentation and mistake in the inducement to contract. Appellants, in support of their argument that the stated acreage available for tillage and pasturage were merely opinions, cite cases involving the valuation of property in which a buyer might well expect a seller would over-estimate. However, these cases are inapposite to misrepresentation of acreage where the seller is in a superior position to know the true acreage than is the purchaser. For cases holding that when the acreage involved is material, false statements and representations made by the vendor as to his knowledge of the number of acres in the tract being sold are statements of fact and not mere opinion, see *Fickbohm v. Schoonover,* 453 S.W.2d 1, 5[8] (Mo.App.1970) and cases cited therein. We believe this principle of law is applicable to this case where the Culhanes were depending upon income from the tillable and pasture acreage to help pay the

mortgage they would have to arrange to finance the purchase of the property.

We do not reach the Bests' contention that their delay in notifying the Culhanes of the intended closing was excusable because of our holding that the trial court did not err in denying them specific performance for the reasons stated hereinabove.

Judgment affirmed.

STEWART and SNYDER, JJ., concur.