Eugene M. ARNOTT and Margie S. Arnott, Plaintiffs-Appellants,

v.

Larry L. KRUSE and Joanne K. Kruse, Defendants-Respondents.

No. 14892.

Missouri Court of Appeals, Southern District, Division One.

May 28, 1987.

Gene A. Hilton, Camdenton, for plaintiffs-appellants.

Shaun K. Baskett, John E. Curran, Curran, Colyer & Clifford, Osage Beach, for defendants-respondents.

HOLSTEIN, Judge.

Plaintiffs, Eugene M. Arnott and his wife Margie S. Arnott, filed their petition in the Circuit Court of Camden County alleging that they were the purchasers of a business in Linn Creek, Missouri, known as the Linn Creek Auction and Golden Eagle Flea Market. Plaintiffs purchased the business which included real estate and personal property from defendants Larry L. Kruse and his wife Joanne K. Kruse on February 28, 1982, for the total sum of

$79,000.00. The auction part of the business was conducted on the real estate purchased. The flea market was conducted in a nearby building. The purchase price was to be paid by a $22,000.00 down payment and a promissory note in the sum of $57,-000.00 to be secured by a deed of trust on the real estate upon which the auction portion of the business was located. Plaintiffs petition sought various relief against the defendants including a temporary restraining order restraining the defendants from proceeding with a foreclosure under the deed of trust, or in the alternative that any sale under the deed of trust be set aside. The petition also sought rescission of the contract. The basis of the rescission was that plaintiffs allegedly were induced to enter the contract by fraudulent representations by Mr. and Mrs. Kruse.[1] Judgment was entered for defendants.[2]

The sole point of plaintiffs on appeal is that their evidence established fraud and the factual findings by the court to the contrary were not supported by substantial evidence. We affirm the judgment of the trial court.

The judgment of the trial court will be sustained by this court unless there was no substantial evidence to support it, it was against the weight of the evidence, it erroneously declared the law, or it erroneously applied the law. *Mark Twain Plaza Bank v. Lowell H. Listrom and Company, Inc.,* 714 S.W.2d 859, 863 (Mo.App.1986). Should we find that the judgment of the trial court was against the weight of the evidence we would do so only with caution and upon a firm belief that the decree or judgment was wrong. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976); *In re Marriage of Medlock,* 720 S.W.2d 796, 797 (Mo.App.1986). Ancillary to the above rules limiting appellate review, is the rule that conflicts in evidence are for the trial court to resolve and we take the facts in accordance with the result reached. *Best v. Culhane,* 677 S.W.2d 390, 393 (Mo.App.

1984). In a court-tried case, the trial court may believe all, part, or none of the testimony of any witness. *Rogers v. Hickerson,* 716 S.W.2d 439, 443 (Mo.App.1986); *Best v. Culhane, supra.* We review the facts in the case before us with these principles in mind.

Plaintiff Eugene M. Arnott (hereinafter referred to as Arnott) first became aware of the Linn Creek Auction through an ad in a Kansas City newspaper in December of 1981. After responding to the ad he received a mimeographed flyer signed by defendant Larry L. Kruse (hereinafter referred to as Kruse). The flyer was admitted into evidence as an exhibit. The relevant portion of the flyer stated the following:

Exactly what you are buying: (1) 3600 sq. ft. building appraised by an insurance adjuster at $17/ft. replacement. (2) All chairs and machinery needed to run the auction. (3) A Chevy moving van. (4) A snack area if you desire to run could bring in another $10,000. If you have no desire to run it there is a couple that will run it. . . .

Each week we have two sales. On Tuesday we sell furniture and other house items. On Wednesday all misc. items are sold. A typical Tuesday night sale should average $3000 and on Wed. around $1000. I've had a number of weeks with around $10,000. If you stay open 50 weeks and using the minimum week's sale, that would show $200,000 volume. I receive 20% commission which would make a $40,000 gross profit. The first Saturday of each month is an antique sale. These sales will average $3000–$7000 per sale also at 20%. Besides people bringing in merchandise for sale, I also buy merchandise. My goal on this was to always double my money. I'd average $100–$250 each week profit.

Expenses are as follows: employees $1080/mo.—elec. $55/mo.—Adv. and phone $150/mo.—misc. $25/mo. This

1. Neither Mrs. Arnott nor Mrs. Kruse were active participants in any discussions involving the transaction, although both signed the contract.

2. No appeal was taken from the judgment dismissing the action against defendant Larry Whitten, the trustee in the deed of trust.

would add up to yearly expenses of $15,-720. You can thus see how you can have a net of $35–50,000, even more if husband and wife could run this business since I hired everything.

Due to my back injury I'm willing to sell for the price I paid for the auction $100,000 cash.

No representation was made relating to the flea market business in the flyer.

Thereafter Arnott and Kruse met to discuss the transaction at Fredrick's Restaurant near Linn Creek. At that meeting they discussed the figures on the mimeographed flyer. Kruse recalled telling Arnott that the figures were a projection based on a sample of his past expenses, and were based only on expenses projected from the separate auction business and not from the flea market operation. Although Kruse indicated he had the documents to back up the expenses of the Linn Creek Auction listed on the flyer, Arnott did not ask to look at the records of the business. According to Kruse, those records would have reflected expenses fairly close to the expenses listed in the flyer.

In support of plaintiffs' claim that the figures for expenses were fraudulent Arnott introduced Kruse's 1981 tax return. The business expenses listed in the return were substantially more than those listed in the flyer. Kruse explained he had been in the business for only ten months at the time he prepared the flyer and had not had the benefit of reviewing his expenses with his tax accountant prior to preparing the flyer. The expenses taken into consideration in Kruse's 1981 tax return relating to the business included travel from Kirksville, where the Kruses' resided, to Linn Creek, vehicle expense, insurance, taxes and rent and other expenses of operating the flea market. As these expenses were not directly related to the auction business they were not included in the expense figures quoted in the flyer, according to Kruse.

About two or three weeks after the meeting at Fredrick's Restaurant, Arnott made a second trip to Linn Creek to inspect the area and the building. Kruse offered to allow Arnott to speak with previous owners. Arnott called Mrs. Ethel Tennis, a former owner of the business, and learned that Kruse had not paid $100,000.00 for the purchase of the auction as stated in the flyer.

In February of 1982, the parties reached agreement. Arnott had his attorney review the first draft of the deed of trust. When the attorney did not find the deed of trust satisfactory, Arnott told his attorney to prepare the documents necessary for the purchase of the auction. The contract was closed on February 28, 1982.

In March of 1982, Kruse worked with Arnott for about a week teaching Arnott the business. No complaint was made during that period about excessive expenses.

In May of 1982, Arnott claims to have discovered his expenses were exceeding the expenses projected in the flyer. Kruse suggested that part of this problem was due to Arnott's increasing salaries of certain employees after he took over the operation of the business. When Arnott discovered that his expenses were exceeding those stated in the flyer and after conferring with counsel, payments on the deed of trust were halted. On June 11, Arnott telephoned Kruse requesting rescission of the contract. The response of Kruse was to institute foreclosure proceedings. Plaintiffs' petition was filed July 28, 1982.

The trial court, after hearing all the evidence and having had an opportunity to view the witnesses, filed findings of fact and conclusions of law which included the following:

After meeting with defendant [Kruse], plaintiff [Arnott] talked to the person who had owned the auction prior to defendant's purchase of it. That person told plaintiff that defendant did not pay $100,000 for the business. Plaintiff was told that defendant paid $72,500 for the business. . . .

Plaintiff knew that defendant had not operated the business for a full year. Plaintiff also knew that the various revenue and expense information provided by defendant were projections based upon actual business operation for lesser peri-

ods of time than those for which the totals were presented. . . .

At best, they can be characterized as projections and estimations of volumes of business and expectations as to revenue, expenses and profit which might be realized from various levels of operations of the auction business. Their accuracy would depend on many variables, e.g., market conditions, management efficiency, quantity of merchandise available for sale and its quality. These statements were opinion expectations and predictions for the future.

The court thereafter entered judgment dismissing the plaintiffs' petition against all defendants.

Plaintiffs claim the above-quoted findings of fact and conclusions of law were erroneous because the preponderance of the evidence proved plaintiffs were unaware of what defendants paid for the business and the representations of income and expenses contained in the flyer were factual representations.

When fraud is alleged the burden of proof as to each element thereof falls on the party asserting the fraud and fraud is never presumed. *Harper v. Calvert*, 687 S.W.2d 227, 229 (Mo.App.1984). Under Missouri law the elements of fraud are: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or his ignorance of its truth, (5) the speaker's intent that it should be acted upon by the person and in the manner reasonably contemplated, (6) the hearer's ignorance of the falsity of the representation, (7) the hearer's reliance on the representation being true, (8) his right to rely thereon, and (9) the hearer's consequent and proximately caused injury. *Sofka v. Thal*, 662 S.W.2d 502, 506 (Mo. banc 1984); *Misskelly v. Rogers*, 721 S.W.2d 170, 172 (Mo.App.1986).

■ The evidence presented by defendants demonstrated that the business had a practice of holding two auction sales each week, one on Tuesday and one on Wednesday, and a monthly antique auction on the first Saturday of each month. There was no showing that the actual revenues received on a "typical" Tuesday or Wednesday were substantially different from the sales reported in the flyer for those days. At no point in the flyer did the defendants represent that they had actually operated the business for fifty weeks out of the year. The flyer merely projected that *if* a buyer would stay open fifty weeks and assuming the typical volumes at each of the sales, the annual volume would be $200,000.00. Arnott admitted that Kruse told him the revenues were just a projection of income. Mere statements of opinion, expectations and predictions for the future are insufficient to authorize a recovery for fraudulent misrepresentation. *Lowther v. Hays*, 225 S.W.2d 708, 714 (Mo. 1950); *Wofford v. Kennedy's 2nd Street Co.*, 649 S.W.2d 912, 915 (Mo.App.1983). There was substantial evidence to support the trial court's conclusions regarding revenues.

With regard to the representations relating to expenses we have more difficulty. The trial court's finding that the statements of expenses were mere statements of opinion, expectation or prediction of the future was erroneous. The amount of expenses was stated in the flyer as an objective fact, not merely the seller's opinion of quality or value. However, a correct decision in a court tried case will not be disturbed because the trial court gave the wrong reasons. *In Re Estate of McMorrow*, 720 S.W.2d 400, 402 (Mo.App.1986); *Mark Twain Plaza Bank v. Lowell H. Listrom Company, Inc., supra.*

■ The evidence here shows that at the time of entering into the contract Arnott was aware the expenses listed in the flyer were not a complete itemization of expenses. He understood at all times the expenses set out in the flyer did not include those expenses related to the flea market. In addition, Arnott admitted he and Kruse had discussed insurance on the building prior to entering into the contract. The contract prepared by plaintiffs' attorney dealt with Arnott's responsibility for insurance and taxes after closing. Insurance and taxes were not listed in the flyer as "expenses" of the auction. These admis-

sions by Arnott are consistent with Kruse's testimony that he told Arnott the expenses listed in the flyer were only a sample of past expenses. Both parties were aware that the actual expenses of the auction business were uncertain. Where mutual recognition of the uncertainty of a given fact exists, neither party is entitled to rely on that fact to support a claim of fraud. *Empire Gas Corp. v. Small's LP Gas Co.*, 637 S.W.2d 239, 243 (Mo.App.1982). Under the facts here, plaintiffs were not entitled to rely on the expenses listed in the flyer as a complete itemization.

■ The second misrepresentation which the plaintiffs claimed to have relied on was that defendants had purchased the business for $100,000.00. On cross-examination Arnott admitted he had inquired of the previous owners regarding their sale of the business. He had been told by the previous owners that the true purchase price paid by defendants for the business was substantially less than $100,000.00. When a party makes an independent investigation he is presumed to have relied on what he learned from that investigation and may not claim that he relied on a contrary misrepresentation. *Consumers Cooperative Association v. McMahan*, 393 S.W.2d 552, 556 (Mo.1965); *Martin v. Brune*, 631 S.W.2d 77, 80 (Mo.App.1982). Plaintiffs cite *Alexander v. Sagehorn*, 600 S.W.2d 198 (Mo.App.1980) for the proposition that when one is induced by a defrauding party not to investigate a misrepresentation, the fact that accurate information was readily available to both parties will not defeat a claim of fraud. Such proposition has no application where one undertakes to make an investigation and learns of the falsity of the representation, as plaintiffs did here.

We hold that the trial court did not err in concluding that plaintiffs had failed to establish fraud. The judgment is affirmed.

CROW, C.J., and GREENE, P.J., concur.