In re the MARRIAGE OF Joseph
A. FELKNER and Susan
Lee Felkner.

Joseph A. FELKNER, Respondent,

v.

Susan Lee FELKNER, Appellant.

No. 17858.

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 28, 1993.

Calvin R. Holden, Springfield, for appellant.

Richard M. Scott, Lamar, for respondent.

CROW, Presiding Judge.

Susan Lee Felkner ("Wife") appeals from a decree dissolving her eight-year marriage to Joseph A. Felkner ("Husband"). She presents four points relied on; the first three concern a parcel of real estate; the last pertains to chattels allegedly owned by her employer but awarded her by the decree. We confine our narrative of the facts to those pertinent to the claims of error, mindful that in this judge-tried case we accept as true the evidence and inferences from it favorable to the decree and

1. The decree shows the street number as "604."

disregard all contrary evidence. *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654[2] (Mo. banc 1989).

The tract in controversy is referred to in the record as 603[1] East Seventh Street, Lamar, Missouri. It was originally owned by Husband's paternal grandmother, Reba Felkner ("Grandmother"). After Husband and Wife married, Grandmother "jointly titled" the tract in her name and Husband's. Husband paid Grandmother nothing.

An "old house" once sat on the tract. Asked what happened to it, Husband testified, "We tore it down."

Another building was thereafter constructed on the tract. The decree characterizes it "a shop building." So shall we.

Husband's testimony about the shop building included this:

Q. ... who built the building?

A. I did.

Q. Who's been paying the taxes on the property?

A. My grandmother.

Q. How much money did you put in the building?

A. About $11,000 or $12,000.

Q. ... who paid the cost of the construction of the building?

A. As far as the materials cost, me and my wife did.

Q. ... Who did the work?

A. I did. Me and my brother.... Probably about equal amounts.

Evidence of the value of 603 East Seventh Street came from three witnesses.

Husband avowed the land is worth $3,000 and the shop building $15,000, for a total of $18,000.

J.D. Pahlow, Jr., Husband's witness, valued the land at "$2,000 or $3,000, somewhere along in there," and the shop building "around $18,000."

Robert Hunter, Wife's witness, appraised the land at $2,500 and the shop building at $18,500, for an aggregate fair market value of $21,000.

We assume that is a typographical error.

Wife valued a "building" at $7,500, but it is unclear in the context of her testimony whether she meant the shop building or a building on the parties' homeplace, not in dispute.

The decree included this:

... [603] East 7th Street ... is owned in joint tenancy by husband and husband's grandmother, Reba Felkner. The interest in the lot is segregated to husband as husband's non-marital asset. During the marriage, the parties constructed a shop building on the lot at a cost of approximately $11,000. The building has contributory value to the total value of the property of approximately $15,000. It is subject to partition by Reba Felkner who legally has the right to claim one-half of the asset in partition proceedings. The marital estate is charged with the sum of $7,500 by reason of this investment. The charge of $7,500 in this asset shall be property of husband.... All of wife's right, title and interest therein is terminated and concluded....

With painful exactitude, the decree catalogued a virtually uncountable number of items of property and awarded each as separate, or marital, as appropriate. One of the principal assets, the parties' lien-free residence valued by the trial court at $42,-500, was awarded to Wife. The decree continued:

To create an approximate equal division of the marital assets, husband is granted judgment against wife for the sum of $14,000.00, which judgment shall be secured by a note and first priority deed of trust on the residence, with interest at the judgment rate payable in installments of $250 per month to be applied first to interest then to principal ... the first payment ... shall be due December 1, 1991, and continuing on the first day of each month thereafter.

Wife's first point relied on reads:

The trial court erred by finding ... Husband's interest in the lot located at [603] East 7th Street ... was non-marital and separate property because the court erroneously applied the law when it failed to consider the contributions of the parties which increased the value of the lot and changed the character of Husband's interest in the lot to marital property.

The import of this point, as we comprehend it, is that the trial court should have held Husband's undivided interest in the land on which the shop building sits is marital property. As we have seen, the trial court held Husband's interest in this land is Husband's separate property. Wife points out Husband valued the land at $3,000. She maintains the construction of the shop building with marital funds transmuted Husband's interest in the land from separate to marital. Consequently, reasons Wife, half the value of the land should be added to the marital property awarded Husband, increasing the aggregate value of marital property awarded him by $1,500.

If this analysis be correct, says Wife, the sum she was ordered to pay Husband to equalize the division of marital property should be lowered by $1,500—from $14,000 to $12,500.

In support of her first point, Wife cites one case, *Breda v. Breda*, 788 S.W.2d 769 (Mo.App.1990). There, a wife argued the trial court erred in finding all of her interest in a residence "had been transmuted into marital property." *Id.* at 772. The Eastern District of this Court disagreed. Although the facts are not set forth in detail, the opinion states:

The property was in both parties names, it was paid for by both parties income from investments and employments, and [the husband] made several improvements on the property.

*Id.* at 772[7]. This evidence was held sufficient to support the trial court's determination that the residence had become marital property.

The instant case differs from *Breda* in that here, no marital funds were spent to acquire Husband's interest in the land at 603 East Seventh Street. Husband's interest in the land was a gift from Grandmother. The instant case also differs from *Breda* in that here, the land was never titled in

Wife's name, but only Husband's and Grandmother's.

Section 452.330, RSMo Supp.1988, reads, in pertinent part:

. . . .

2. . . . "**marital property**" means all property acquired by either spouse subsequent to the marriage except:

(1) Property acquired by gift . . .;

. . . .

(5) The increase in value of property acquired . . . pursuant to [subdivision] (1) . . . unless marital assets . . . have contributed to such increases and then only to the extent of such contributions.

3. All property acquired by either spouse subsequent to the marriage . . . is presumed to be marital property. . . . The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection 2 of this section.

4. Property which would otherwise be nonmarital property shall not become marital property solely because it may have become commingled with marital property.

. . . .

Inasmuch as Husband's interest in the land at 603 East Seventh Street was acquired by gift from Grandmother, Husband's interest was initially his separate property. § 452.330.2(1). Any increase in the value of Husband's interest in the land attributable to market conditions or inflation would likewise be his separate property. § 452.330.2(5). Any increase in the value of Husband's interest in 603 East Seventh Street attributable to contribution of marital assets would be marital property, but only to the extent of such contributions. § 452.330.2(5).

In an obvious effort to apply § 452.330.-2(5) and the "source of funds" rule adopted in *Hoffmann v. Hoffmann*, 676 S.W.2d 817, 824–25 (Mo. banc 1984), the trial court found the parties spent approximately $11,-000 of marital assets constructing the shop building. That finding is supported by Husband's testimony.

■ The trial court further found the shop building enhances the value of 603 East Seventh Street by $15,000. That, of course, is $4,000 more than the parties spent on the shop building. That finding is also supported by Husband's testimony, which the trial court had the right to believe. In this judge-tried case, credibility of the witnesses and the weight to be given their testimony was a matter for the trial court, which was free to believe all, part, or none of the testimony of any witness. *Herbert v. Harl*, 757 S.W.2d 585, 587[1] (Mo. banc 1988).

■ After declaring Grandmother owns a half interest in 603 East Seventh Street, the trial court held the parties own, as marital property, a half interest in the shop building (but not the land). The trial court valued the marital interest in the building at $7,500—half the amount by which the building increases the value of 603 East Seventh Street.

The trial court thus recognized the marital contribution to 603 East Seventh Street and correctly followed the applicable law in identifying the marital interest in that asset.

We are unpersuaded that, as a matter of law, construction of the shop building with marital assets changed Husband's interest in the *land* at 603 East Seventh Street from separate to marital. The differences between the facts here and those in *Breda*, 788 S.W.2d 769, are detailed *supra*. Given those differences, we hold the trial court did not err in failing to find Husband's interest in the *land* at 603 East Seventh Street had become marital property. Wife's first point is denied.

■ Her second point avers the trial court erred in valuing the shop building at $15,000. She argues the trial court should have assigned it a value of at least $18,000 because Husband's expert (Pahlow) appraised it at $18,000 and her expert (Hunter) appraised it at $18,500.

■ As reported earlier, Husband testified the shop building is worth $15,000. That testimony was received without objection, and was consequently before the trial

court for such weight as the trial court chose to give it. *Appelhans v. Goldman,* 349 S.W.2d 204, 207[5] (Mo.1961). The trial court apparently found Husband's testimony more credible than that of the two appraisers. That was the trial court's prerogative. *Hopkins v. Hopkins,* 639 S.W.2d 249, 250[1] (Mo.App.1982). We do not substitute our judgment for that of the trial court on credibility issues. *Zweemer v. Cantrell,* 823 S.W.2d 531, 533–34[4] (Mo.App.1992); *Strauss v. Strauss,* 755 S.W.2d 742, 743[1] (Mo.App.1988). Wife's second point is without merit.

Her third point asserts the trial court erred by finding Grandmother owns "a one-half interest by the law of partition" in 603 East Seventh Street. Wife's reasoning, as we fathom it, is: (1) the marital assets that went into the shop building far exceeded the value of the land at the time Grandmother "jointly titled" it in her name and Husband's; (2) therefore, the trial court should have found the parties' marital interest in 603 East Seventh Street is greater than fifty percent; (3) because the marital interest was awarded Husband, such a finding would raise the value of the marital property he received; (4) this, in turn, would reduce, or entirely eliminate, the need for Wife to compensate Husband for the difference in value of the marital assets awarded her and those awarded him.

The first flaw in the third point is that it is based on the premise that the trial court should have accepted the "average" of the values of the two appraisers in determining the value of the marital interest in 603 East Seventh Street. We rejected that contention in denying point two.

The second frailty in the third point is that one of the two alternative calculations advocated by Wife is based on the assumption that Husband's interest in the *land* at 603 East Seventh Street was transmuted into marital property. We rejected that hypothesis in denying point one.

The third problem with point three is the record is insufficient to demonstrate the

trial court's findings are incorrect. There is no evidence of the value of the land at the time Grandmother titled it in her name and Husband's, and there is likewise no evidence of the amount paid by Grandmother in taxes during the ensuing years.

The fourth, and most serious, weakness in point three is that it is contrary to the theory on which the case was tried. In opening statement, Husband's lawyer told the trial court the *land* at 603 East Seventh Street is "non-marital" and "the $15,000 contributory value" of the shop building is a joint tenancy with Grandmother. Therefore, said Husband's lawyer, the charge against the marital estate "should be half of the contributory value"—$7,500. Husband's lawyer added that Wife's lawyer "analyzes it the same way," except "their value is a little higher ... they feel the contributory value should be about $9,500."

Wife's lawyer,[2] in opening statement, said Husband's lawyer "has provided a reasonably fair and accurate description of what the issues are for the Court." Wife's lawyer did not dispute the analysis of Husband's lawyer regarding the parties' marital interest in 603 East Seventh Street, and Wife never maintained in the trial court that the marital interest was anything other than half the amount by which the shop building enhances the value of 603 East Seventh Street.

 A party will not be heard to complain on appeal of an alleged error in which, by his own conduct at trial, he joined or acquiesced. *Taylor v. Cleveland, C., C. & St.L.Ry. Co.,* 333 Mo. 650, 63 S.W.2d 69, 74–75[15] (1933); *In re Marriage of Medlock,* 749 S.W.2d 437, 440[3] (Mo.App.1988). An appellate court reviews a case only upon the theory tried. *Burden v. Burden,* 811 S.W.2d 818, 820[1] (Mo.App.1991); *In re Marriage of Hunter,* 614 S.W.2d 277, 278[2] (Mo.App.1981). These rules bar Wife's third point.

 Her fourth point reads:

---

2. The lawyer representing Wife in this appeal is not the lawyer who represented her in the trial court.

The trial court erred by finding that certain property that had been returned to the parties' employer was marital property because the court's classification of the property was not supported by substantial evidence, and is against the weight of the evidence.

Rule 84.04(d), Missouri Rules of Civil Procedure (1992), reads, in pertinent part:

The points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous....

The purpose of the rule and the necessity of obeying it are fully discussed in the venerable case of *Thummel v. King*, 570 S.W.2d 679, 684–88 (Mo. banc 1978).

Wife's fourth point does not identify the disputed property, yields no clue as to wherein and why the "classification" of it was unsupported by substantial evidence, and supplies no hint as to wherein and why the ruling was against the weight of the evidence.

In *Best v. Culhane*, 677 S.W.2d 390 (Mo. App.1984), a point relied on stated "no substantial evidence supports the judgment ... and the judgment is against the weight of the evidence." *Id.* at 394. The Eastern District of this Court held the point preserved nothing for review in that it failed to state wherein and why there was no substantial evidence to support the judgment or wherein and why the judgment was against the weight of the evidence. *Id. Accord: Tripp v. Harryman*, 613 S.W.2d 943, 950[12] (Mo.App.1981).

Wife's point four suffers the same fatal defect and thus presents nothing for review. *In re Marriage of Swofford*, 837 S.W.2d 560, 562[1] (Mo.App.1992).

▮ Gratuitous examination of the record for plain error per Rule 84.13(c) reveals no manifest injustice or miscarriage of justice. The disputed items were listed on "Defendant's Exhibit No. 10." Husband testified "many" of the items belonged to the parties. Wife testified the items were not "property of the marriage." However, she added that if Husband wanted any of them, "he's welcome to have them."

Inferably, the trial court found Husband's testimony more worthy of belief. The trial court may have concluded Wife's willingness for Husband to have the items was inconsistent with her contention that they belonged to the employer. It was for the trial court to assess credibility between Wife and Husband on this issue. *Herbert*, 757 S.W.2d at 587[1]. Wife's fourth point does not warrant plain error relief.

The decree of dissolution of marriage is affirmed.

SHRUM, J., concurs.

PARRISH, C.J., concurs and files concurring opinion.

PARRISH, Chief Judge, concurring.

I concur. I write separately only to comment on the reference, in the holding of the trial court, to the building that was constructed on the real property at 603 East Seventh Street in Lamar, Missouri.

Husband owned an undivided one-half interest in the Lamar property as joint tenant with his grandmother. As explained in the principal opinion, it was non-marital property. The trial court's holding, however, was that, "the parties own, as marital property, a half-interest in the shop building (but not the land)." It is this choice of words that concerns me. I fear that one might infer that the trial court treated the building as if it were something other than real property. It did not.

As an improvement on the land, the shop building became part of the real property that was owned by husband and his grandmother. However, the increased value of husband's interest in the real property that was attributable to expenditures of marital assets was a part of the marital estate. § 452.350, RSMo Supp.1988. The increase in value was properly considered in the scheme the trial court utilized in distributing the marital property between the parties. *See Bishop v. Bishop*, 658 S.W.2d

512, 515 (Mo.App.1983), *appeal after remand,* 677 S.W.2d 413, 414 (Mo.App.1984).