Bonnie A. BARTH, Respondent,

v.

Robert D. BARTH, Appellant.

No. 57153.

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 4, 1990.

did not raise the issue of the independence of her claims either at the hearing or in their brief.

**128**

Melody Erin Noel, St. Louis, for appellant.

Robert Stephen Flavin, St. Louis, for respondent.

GARY M. GAERTNER, Presiding Judge.

Appellant, Robert D. Barth, appeals from a decree of dissolution entered by the Circuit Court of St. Charles County. Appellant challenges the court's award of maintenance in gross, the division of marital property, the method by which a marital asset was valued and the award of $7,500.00 in attorneys' fees. We affirm the judgment of the circuit court. We will briefly review the facts of the case before addressing appellant's points.

Appellant wed respondent, Bonnie A. Barth, on July 20, 1974. Approximately three years later, appellant sold the home in which they were living (which was his property prior to the marriage) and purchased a lot in St. Charles with the proceeds. They later built a house on this property which served as their marital residence. Some time thereafter, appellant established Barth Battery Co., a sole proprietorship, which was originally funded by respondent's father. Barth Battery sold batteries wholesale to service stations and retail parts to stores. Respondent was a school teacher with the St. Charles School District throughout the parties' marriage.

On November 10, 1980, appellant purchased Northwest Auto and Trailer from Joseph Laws for $50,000.00. The fifty thousand dollars represented marital funds, however, the company was operated as a sole proprietorship by the appellant. The business was a full-service automobile repair shop which also sold trailer hitches. Unfortunately, appellant was not able to do as well with the business as Mr. Laws had, and revenues plummeted.

In October of 1981, Mr. Laws purchased a ½ interest in the business for $25,000.00. Both Mr. Laws and appellant co-managed the business and Mrs. Barth worked periodically at the store during the week and on some weekends. Mr. Laws and appellant drew approximately $25,000.00 per year in salary; respondent was not paid for her work at Northwest Auto. This business included the business known as Barth Battery. The business was incorporated under the name of Northwest Automotive and Trailer Hitch Sales & Service, Inc., with appellant and Mr. Laws each owning fifty percent of the outstanding shares of stock. In addition to the sales agreement, a repurchase of stock agreement was entered into by Mr. Laws and appellant. This agreement provided that either of these two could repurchase the other's stock (and interest in the company) for the "modified book value" of the stock which was to be determined by an appraisal at that time.

While respondent did not own any stock in Northwest Auto, the parties do not dispute that appellant's interest in the company was marital property. The court, likewise, treated it as such in its decree.

Some time in either 1984 or 1985, respondent got pregnant and had an abortion. While respondent claims she had the abortion in order to save their marriage, appellant claims that he did not approve of her abortion. The parties' marriage began to deteriorate soon thereafter. Appellant began seeing another woman in April of 1986. Respondent learned of the affair in July of 1986 and the parties separated three to four weeks later. Respondent filed her petition for dissolution of marriage on November 13, 1986.

On February 16, 1987, appellant sold his interest in Northwest Auto to Joseph Laws

for $66,537.00. Appellant also then purchased Mr. Laws' interest in Barth Battery for $46,522.00. The court treated appellant's ½ interest in Northwest Auto, prior to the sale in 1987, as marital property since respondent did not consent to the sale. This is not disputed on appeal. The court also treated the entire value of Barth Battery, $93,000.00, as marital property, which is also not appealed. What is disputed in regard to Northwest Auto is the method of valuation the court allowed respondent's expert to use in arriving at the value of Northwest Auto.

The trial of the matter was held on January 17 and 18, 1989. On June 30, 1989, the circuit court entered its decree of dissolution and, relevant to the present appeal, found that the parties possessed a total of $732,205.57 in marital assets, awarded respondent fifty-five percent of these assets and appellant forty-five percent, awarded respondent $134,176.65 as maintenance in gross and awarded respondent $7,500.00 in attorney's fees. We will address each of appellant's points on appeal in the order presented in his brief.

■ Appellant first challenges the court's award of $134,176.65 as maintenance in gross to respondent. Missouri Revised Statute § 452.335.1 (Supp.1988), provides the authority for the court to award maintenance. RSMo § 452.335.1 states:

> 1. In a proceeding for ... dissolution of marriage or legal separation, ... the court may grant a maintenance order to either spouse, but only if it finds that the spouse seeking maintenance:
>
> (1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and
>
> (2) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

Appellant argues that the respondent is able to support herself through her employment as a school teacher and, thus, the second prong of RSMo § 452.335.1 is not satisfied. We do not agree.

The court properly found that respondent had been employed as a school teacher during the marriage and continued to be employed at the time of the parties' dissolution earning $27,337.00 per year. After stating that respondent had paid for all of her "daily, weekly and monthly expenses including the house payment, food, clothing, utilities, etc.", the court found that respondent was in need of maintenance as allowed under RSMo § 452.335. The court's findings are supported by the evidence.

■ Respondent submitted a statement of income and expenses which showed her monthly expenses exceeded her monthly income by $300.00. In addition, she testified at trial that she had to borrow money from her parents in order to meet her expenses. These factors support finding that respondent lacks sufficient funds to meet her needs and would lack the income to meet monthly expenses as required under RSMo § 452.335. While it is true that respondent was awarded her pension from the Missouri State Teacher's Pension Fund in the amount of $38,649.16 and possessed $17,649.16 in an IRA, we must point out that respondent need not deplete her share of the marital property before being eligible for maintenance. *In re the Marriage of Schatz,* 768 S.W.2d 607, 612 (Mo.App., S.D.1989). Nor does the fact that respondent is employed render an award of maintenance improper. *See Moody v. Moody,* 725 S.W.2d 625, 626–27 (Mo.App., E.D. 1987).

■ Having properly determined that respondent was entitled to maintenance under RSMo § 452.335.1, the trial court awarded maintenance in gross because the value of the marital property that was distributed to the respondent in the decree was less than the value of the marital assets that the court determined she was entitled. The $134,176.65 award of maintenance in gross was necessary to accomplish the court's distribution scheme. An award of maintenance in gross to balance the

distribution of marital property is proper. *Moody*, 725 S.W.2d at 626. Point denied.

■ Appellant next claims that the trial court's distribution of fifty-five percent of the marital assets to respondent was erroneous. Appellant claims that the only basis for the disproportionate distribution was his marital misconduct.

The trial court, indeed, stated that appellant's adulterous conduct caused the break-up of the marriage and specifically noted this conduct in the portion of its order awarding respondent fifty-five percent of the marital assets. It is also true that the court specifically found that appellant sold marital assets, Northwest Auto, without the knowledge or consent of respondent. We note that appellant received the bulk of the income-producing property, the Barth Battery Business, in the court's distribution. These are appropriate factors for the court to consider in reaching a fair and equitable, albeit not necessarily equal, division of marital property. *Mika v. Mika*, 728 S.W.2d 280, 283–84 (Mo.App., E.D. 1987); *Corey v. Corey*, 712 S.W.2d 708, 710 (Mo.App., E.D.1986).

It is true that the Southern District has held that inordinate focus on a particular incident was an inappropriate basis for a court to award a "wholly disproportionate distribution of marital property" when dealing with a marriage of long duration. *D'Aquila v. D'Aquila*, 715 S.W.2d 318, 320 (Mo.App., S.D.1986). However, the marriage in *D'Aquila* lasted over twenty years. While the particular incident in *D'Aquila* was indeed adultery, the trial court had distributed sixty percent of the marital property to the wife. *Id.* The Southern District modified this distribution to reflect a fifty-five percent distribution to wife, the same proportion as respondent received in our case. *Id.* at 321.

Moreover, whether a particular distribution is wholly disproportionate will depend on the facts of each case. While the *D'Aquila* court found a sixty percent award to one party to be unacceptably disproportionate, an award of eighty-seven percent of the marital property has been

found acceptable. *Schwarz v. Schwarz*, 631 S.W.2d 694, 695 (Mo.App., E.D.1982).

The trial court has discretion in distributing marital property and we do not find that it abused its discretion on the present facts. Indeed, in *Corey*, we stated that the award of fifty-five percent of the marital property to wife would have been justified as a penalty for husband's marital misconduct, had such misconduct been the only basis for the distribution. *Corey*, 712 S.W.2d at 710. We find the trial court's award of fifty-five percent of the marital property to respondent in the present action to be supported by the record and not an abuse of discretion.

■ In appellant's third point on appeal, appellant claims that the trial court erred in basing its valuation of Northwest Auto on the testimony of respondent's expert witness, Mr. Piskulic. He alleges that Mr. Piskulic's opinion was conjecture and speculation since it did not take into account the factors for valuation of closely held corporations which are set forth in Internal Revenue Service Ruling 59–60, I.R.B. 1959–9, 8. However, appellant has cited no authority for the proposition that a Missouri dissolution court must follow an Internal Revenue Service Ruling in determining the value of any asset, specifically that of a closely held corporation.

Mr. Piskulic was a certified public accountant who testified to his education, business experience and who had valued several closely held corporations prior to the present trial. While appellant did voir dire Mr. Piskulic prior to his rendering an opinion on Northwest Auto's value, there is no claim on appeal that Mr. Piskulic should not have been qualified as an expert.

It is also true that Mr. Piskulic used the income approach which he testified was pursuant to generally accepted accounting principles. In using this approach, Mr. Piskulic took the average yearly increase in revenues of the company based on Northwest Auto's federal tax forms for the years 1983, 1984 and 1985 and estimated the future earnings of the company for twelve subsequent years. Mr. Piskulic then discounted these figures at a rate of ten per-

cent to arrive at a present value for Northwest Auto of approximately $908,000.00.

We recognize that Mr. Piskulic's method did not take into account the assets of the corporation, the earnings and experiences of comparable companies in the same industry, the economic outlook in general or the goodwill of the business. However, appellant's attorney had the opportunity to cross-examine Mr. Piskulic regarding these factors to attack the weight his opinion should be given. Appellant's attorney did so. Appellant also had the opportunity to put on testimony using another method more acceptable to him which rebutted Mr. Piskulic. Appellant did not. A court can rely on the opinion of accountants regarding the value of a business in dissolution proceedings. *Moody*, 725 S.W.2d at 626. The trial court was entitled to value Northwest Auto based on Mr. Piskulic's testimony.[1] Point denied.

■ Appellant's final point on appeal claims error in the trial court's award of $7,500.00 in attorney's fees to respondent. Appellant argues that respondent's share of the marital and separate assets are sufficient for her to pay her attorney's fees without hardship. The trial court found that respondent's attorney's fees totalled over $37,000.00. Respondent had paid $22,257.00 as of the time of trial. The trial court also specifically noted that appellant sold the parties' marital interest in Northwest Auto to Mr. Laws for $66,000.00 without respondent's knowledge or consent. The trial court, as stated previously, went on to determine that the value of Northwest Auto was $590,000.00.

Respondent, in the present case, is the recipient of the majority of the marital property and is arguably able to pay her own attorney's fees. However, in *O'Neal v. O'Neal*, 703 S.W.2d 535 (Mo.App., E.D. 1985), we stated that the ability to pay is but one factor that a court may consider in awarding attorney's fees and specifically noted that the appellant in *O'Neal* had sold marital property at prices well below market value in upholding the trial court's

award of $5,000.00 in attorney's fees. *O'Neal*, 703 S.W.2d at 539. As in *O'Neal*, appellant sold a marital asset, Northwest Auto, for a price well below its value. The court's award of $7,500.00 in attorney's fees was not an abuse of discretion.

The judgment of the trial court is, in all respects, affirmed.

CRIST and PUDLOWSKI, JJ., concur.

---

1. We note that the trial court apparently did weigh the value of Mr. Piskulic's testimony.

The court valued the business at $590,000.00 rather than $908,000.00.