In re the Marriage of Sharon Ann
JOHNSON, Petitioner–
Appellant,

v.

Peter David JOHNSON, Respondent–
Respondent,

and

Vernedda Johnson, Third–Party
Respondent–Respondent.

No. 58161.

Missouri Court of Appeals,
Eastern District,
Southern Division.

Nov. 12, 1991.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 18, 1991.

David P. Senkel, Gregory K. Laughlin, Thurman, Smith, Howald, Weber & Bowles, Hillsboro, for petitioner-appellant.

Randall S. Parker, St. Louis, Kevan L. Karraker, Manley, Karraker & Reeves, P.C., Farmington, for respondents.

SMITH, Presiding Judge.

Wife appeals from the trial court's order in this dissolution action challenging the award of marital property, the award of maintenance, and the amount of attorney's fees awarded to her.

The parties were married in 1964 and separated in 1984. After their marriage they moved to Chicago where both were employed at comparable salaries. Wife's employment included a job as a secretary for an executive of Monsanto. In 1968, when husband's father became ill, the parties returned to the St. Francois county area to run the husband's family's cemetery business. This move was at the suggestion, if not the urging, of the husband's parents. The cemetery was rundown and in the first years after the move both parties devoted long hours to the business and the improvement thereof. They received minimal salaries for their work. They did receive the use of a residence located on the cemetery grounds, automobiles owned by the cemetery corporation, and utilities paid for by the cemetery company. There was evidence that an incentive for the movement to St. Francois county and the operation of the family business was the promise of the husband's parents that husband would eventually receive the cemetery business and property. The evidence was in dispute as to whether this would occur during the lives of the parents or would be by inheritance. No documents evidencing a transfer of the ownership of the stock in the cemetery corporation were in existence.

Subsequently, husband began working at Anheuser–Busch in St. Louis. Wife became at that point the person mainly responsible for the operation of the cemetery business. During this period the cemetery business prospered and in the two years after the separation had its most successful years. She maintained her residence on the cemetery property and continued to manage the business until shortly before the dissolution hearing when she was evicted from the premises and fired as cemetery manager. The parties separated in 1984 when wife became aware that husband had had an affair with an employee of the cemetery company and was having an affair with a co-worker at Anheuser–Busch. These affairs were memorialized by nude photographs of the women involved, some taken on the marital bed, which photographs husband concealed under his socks in the dresser in the marital bedroom. At trial husband admitted the affairs. He also produced evidence that at times during the marriage wife had had a drinking problem. Wife denied any problem at least prior to the separation.

Much of the evidence at the trial concerned the issue of the ownership of the cemetery corporation stock. Wife presented evidence from which it could have been determined that the stock had been transferred from husband's mother to husband in 1973 or 1974, after the death of husband's father in exchange for a lifetime utilization of another residence on the cemetery property by the mother and a lifetime payment of $250 per month. This evidence included husband's pleading in the dissolution action, his sworn statement of property filed in the proceeding, and a series of federal tax returns in all of which he claimed a 100% ownership of the stock of the cemetery corporation. It was refuted by his amended statement of property, his testimony at trial, and the testimony of his mother who denied that any transfer had

occurred and testified that the only transfer contemplated was upon her death by testamentary disposition. The trial court found that no transfer occurred and decreed ownership of the stock to be in the mother. Wife challenges this finding and contends that the marital property of the marriage includes the increase in value of this asset resulting from the efforts of the parties during the marriage. Our review of the trial court's finding of fact on this issue is extremely limited. *Clark v. Clark,* 801 S.W.2d 95 (Mo.App.1990) [1]. Whatever doubts we may entertain concerning the credibility of husband and his mother, resolution of that credibility is vested with the trial court. *Id.* [11]. The record is sufficient to support a finding that husband explored various methods to effectuate a transfer, had documents prepared to accomplish such a transfer, and that mother was privy to such attempts, but that no transfer in fact occurred because no satisfactory method was arrived at to protect the mother's longterm interests and to preclude unwanted tax burdens to her. Under our limited scope of review we are constrained to affirm the trial court's finding that no transfer of the ownership of the cemetery corporation stock occurred.

■ The trial court divided the property which it found to be marital 68% to wife and 32% to husband. This was in accordance with the distribution suggested by husband. The total marital property received by the wife was $71,000. In addition the court awarded $16,800 maintenance in gross payable over 24 months at $700 per month, such award to be nonmodifiable. It awarded no permanent maintenance. Wife challenges this award. Husband's income from his job and from investments is approximately $55,000 per year exclusive of any benefits he may receive from the cemetery business of which he is president. The trial court concluded that the award of marital property was sufficient for the wife to purchase a residence for herself free from debt, purchase an automobile, and still pay for her regular monthly expenses in the approximate amount of $700 per month. It further concluded that she possessed the requisite skills to obtain appropriate employment. We are unable to find support for these findings in the record.

■ The appellate courts of this state have consistently held that it is not necessary for a spouse to expend the marital property received in the dissolution proceeding in order to maintain an acceptable standard of living. *Barth v. Barth,* 800 S.W.2d 127 (Mo.App.1990) [2]. Much of the property received by the wife here is non-income producing and its utilization for the purposes indicated by the trial court would require that it be disposed of and the proceeds invested. Even if it could be presumed that such should be required and that the property could be sold for the value attributed to it by the trial court, it is apparent that the income received on the money if invested would be far less than necessary to meet wife's reasonable needs. Her basic living expenses as found by the trial court are $700 per month or $8400 per year exclusive of lodging and transportation. Even at a most generous investment rate of 10% her gross income from investment would be $7100 annually, less than her required living expenses. It certainly is not sufficient to provide for those expenses and additionally allow her to purchase a home and an automobile, items she previously had available through the cemetery company.

■ The court's finding that she was capable of employment sufficient to meet her reasonable needs is also flawed. There was no evidence that she had employment available to her nor the rate of compensation which she could receive from employment. The only evidence was her testimony that she might be able to obtain part-time bookkeeping at approximately the minimum wage. The trial court based its assessment of her earning capacity on several factors. First it pointed to her experience more than twenty years previously as an "executive secretary". There was no evidence that she was ever an executive secretary. She was the secretary to an executive, a far different and less prestigious position. She had not utilized her

secretarial training for more than twenty years. To conclude that those rusty skills are convertible into employment in the present business environment of computers and complicated communications equipment is naive at best.

The court also concluded that her experience in running a cemetery for twenty years demonstrated her employability. There was no evidence that any demand exists in her local area or elsewhere for experienced cemetery operators. The court further concluded that her one and one-half year education in a local junior college more than twenty years previously qualified her for a teaching position. This is sheer speculation with no basis of evidentiary support. There is no evidence that any of her previous credits would be applicable to obtaining a degree in education today and nothing in the record suggests that she is employable as a teacher with her present level of education. The court further concluded that wife's experience as a teacher of horseback riding provides a potential for income. The only evidence was wife's testimony that she taught horseback riding to a very limited number of students at various times for nominal compensation. There was no evidence that she could support herself with this income. There is simply no evidence to support the trial court's conclusion that wife is capable of meeting her reasonable needs through employment.

■ Wife is 44 years of age and suffers from arthritis. The extent of disability occasioned by this problem was sharply contested at the trial and the trial court's finding was that the disability was minimal. Accepting that assessment the fact still remains that wife has arthritis and has some disability therefrom. The standard of living of the marriage was, as described by the court, "comfortable". This was in no small part the result of the wife's substantial work in running the cemetery allowing her husband to pursue his lucrative career with Anheuser–Busch. The parties also received substantial benefits from the cemetery in the form of housing, utilities, and vehicles for personal use. These benefits are still available to the husband but are no longer available to the wife. The effect of the court's denial of maintenance to the wife is to reduce her standard of living to virtual poverty while increasing that of husband. Such a result is not just.

■ The trial court apparently made the award of maintenance in gross as an adjustment to the marital property for in the findings of fact it indicated its conclusion that wife was "immediately capable of engaging in substantial gainful employment." This is not indicative of rehabilitative maintenance. *Barth v. Barth, supra.* In addition to the marital property awarded to wife including the maintenance in gross she is entitled to permanent maintenance. *In re Marriage of Schatz,* 768 S.W.2d 607 (Mo.App.1989) [7]. We determine that the amount of such maintenance should be $700 per month, well within the capacity of husband to provide. We find no error in the court's award of attorney's fees.

The judgment is modified to provide for maintenance in the amount of $700 per month and as modified the judgment is affirmed.

CARL R. GAERTNER, C.J., and GRIMM, J., concur.