In re the MARRIAGE OF Shirley A. Swofford and Kenneth W. SWOFFORD.

Shirley A. SWOFFORD, Appellant,

v.

Kenneth W. SWOFFORD, Respondent.

No. 17959.

Missouri Court of Appeals, Southern District, Division One.

Aug. 20, 1992.

Rehearing Denied Sept. 8, 1992.

Randee S. Stemmons, Stemmons, Stemmons & Cowherd, Mt. Vernon, for appellant.

John A. Woodard, Clapper & Woodard, Monett, for respondent.

CROW, Presiding Judge.

Appellant, Shirley A. Swofford, brings this appeal from a decree dissolving her marriage to Respondent, Kenneth W. Swofford. Among the six points relied on in Appellant's brief are three which read:

## III

The trial court erred in dividing the marital property for the reasons that the valuations attributed to the marital assets were against the weight of the evidence.

## IV

The trial court erred in failing to completely divide the marital property for the reason that certain items of marital property in evidence were not awarded to either party.

## V

The trial court erred in finding that Appellant did not own non-marital property and distributing Appellant's non-marital property as marital assets for the reason that property acquired by gift is statutorily excluded from marital property.[1]

Rule 84.04(d)[1] reads, in pertinent part:

The points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous....

Setting out only abstract statements of law without showing how they are related to any action or ruling of the court is not a compliance with this Rule.

The purpose of the rule and the necessity of obeying it are fully discussed in the leading case of *Thummel v. King*, 570 S.W.2d 679, 684–88 (Mo. banc 1978).

 Appellant's point III supplies no hint as to wherein and why the valuations attributed to the marital assets by the trial court were against the weight of the evidence, nor does the point identify the assets allegedly misvalued.

In *Best v. Culhane*, 677 S.W.2d 390 (Mo. App.1984), a point relied on stated "no substantial evidence supports the judgment ... and the judgment is against the weight of the evidence." *Id.* at 394. The Eastern District of this Court held the point preserved nothing for review in that it failed to state wherein and why there was no substantial evidence to support the judgment or wherein and why the judgment was against the weight of the evidence. *Id. Accord: Tripp v. Harryman*, 613 S.W.2d 943, 950[12] (Mo.App.1981).

Appellant's point III suffers the same fatal defect and consequently presents nothing for review.

 Points IV and V are similarly flawed. The former yields no clue as to the items of marital property that were not awarded or the party who should have received them; the latter provides no inkling as to wherein and why the trial court mistakenly found Appellant did not own non-marital property and no identity of the non-marital property allegedly distributed by the court as marital assets. The points thus present nothing for review. *Thummel*, 570 S.W.2d at 684–85; *In re Marriage of McCoy*, 818 S.W.2d 322, 324–25 (Mo.App. 1991).

Gratuitous examination of the record for plain error per Rule 84.13(c) reveals no manifest injustice or miscarriage of justice in the trial court's disposition of the property.

We next address point VI wherein Appellant complains that the trial court erred in barring Appellant's "expert appraiser" from testifying. Respondent, by timely objection at trial, maintained the appraiser should be excluded because her identity had not been disclosed by Appellant in answering Respondent's interrogatories.

Appellant asserts the appraiser should have been allowed to testify in that Respondent had learned, while taking Appellant's deposition three months before trial, that the appraiser had made an appraisal of one of the tracts of marital real estate.

1. Rule references are to Missouri Rules of Civil Procedure (1992).

Nowhere in Appellant's brief are we guided to anyplace in the transcript where an offer of proof may be found regarding the testimony the appraiser would have presented. We have scrutinized the transcript, but have uncovered no such offer.

■ Subject to a narrow exception inapplicable here, appellate courts will not review excluded evidence without a specific and definite offer of proof. *Frank v. Environmental Sanitation Management, Inc.*, 687 S.W.2d 876, 883–84[14] (Mo. banc 1985). Accordingly, we hold Appellant's point VI is ineligible for review.

■ We turn now to point I, which assigns error in the trial court's denial of Appellant's prayer for maintenance. On this subject, we note that at time of trial (September 19, 1991), Appellant was 52 years of age[2] and had been married to Respondent since February 14, 1960.

■ In reviewing the denial of maintenance, we are mindful that where, as here, the trial court made no findings of fact pertinent to that issue, all facts are deemed found in accordance with the result reached. Rule 73.01(a)(2); *Stratton v. Stratton*, 694 S.W.2d 510, 512[3] (Mo.App. 1985); *Irwin v. Irwin*, 678 S.W.2d 861, 862[2] (Mo.App.1984). Accordingly, we accept as true the evidence and inferences from it favorable to the trial court's decree and disregard contrary evidence. *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654[2] (Mo. banc 1989).

We begin our consideration of the maintenance question by taking account of the marital property awarded Appellant. She received one parcel of real estate, referred to in the record as a 35–acre tract. The trial court found the fair market value of the tract is $43,750 and it is subject to a lien securing a $13,170.30 debt. While it appears from the decree that Respondent is supposed to pay the debt, the decree sets forth no details about such duty or the consequences of breaching it. There was no evidence the tract is income-producing.

The second item of marital property awarded Appellant is referred to in the record as the "Bonnini" note. Although the evidence regarding it is sparse, we gather the parties bought a 10–acre tract for $22,000, and later sold it for $32,000. Inferably, the sale was by contract for deed, as Respondent testified he still pays $221.96 per month on the tract and receives $225 per month from the buyer. The trial court found the buyer owes the parties $29,135.36, and the parties owe $20,152 to the individual from whom they bought the tract. The trial court awarded this asset to Appellant, but ordered her to pay the debt.

The third item of marital property awarded Appellant was a 1988 Cadillac, valued by the trial court at $19,000. The testimony indicates the vehicle is subject to a lien securing a $15,259.60 debt. The decree indicates Appellant is supposed to pay the debt, and she says so in her brief.

Appellant was also awarded furniture, household goods, jewelry, cooking utensils and linens.

The trial court found the net value of the marital property awarded Appellant was $68,100, and the net value of the marital property awarded Respondent was $110,-400, the difference being $42,300. The trial court further found there should be a "substantially equal division of property." To equalize the division, the trial court awarded Appellant "judgment" against Respondent for $21,150.

The parties' marital home was situated on a 72–acre tract owned by them, lien-free. Before separating in October, 1990, they operated a dairy farm there. Respondent remained on the property after the separation and continued the dairy operation. The trial court awarded the tract to Respondent, together with the dairy herd and farm equipment.

---

2. We are told this in the statement of facts in Appellant's brief. Contrary to Rule 84.04(h), the brief does not provide a reference to a page in the record where the assertion can be verified. However, in Respondent's brief he accepts Appellant's statement of facts. Where a statement of fact is asserted in one party's brief and conceded to be true in the adversary's brief, we may consider it as though it appears in the record. *Nastasio v. Cinnamon*, 295 S.W.2d 117, 119[1] (Mo.1956); *O.S.G. by L.G. v. G.B., Jr.*, 805 S.W.2d 704, 705[1] n. 3 (Mo.App.1991).

Before the breakup, Appellant helped with the milking and chores, but was not otherwise employed until she leased, and began operating, the "East Purdy Store" in February, 1990. This venture failed, as evidenced by a $56,158 loss shown by the parties on their 1990 income tax return. Appellant closed the store March 1, 1991. At trial, she testified the property owner owes her $3,000 for the inventory, which he will pay when he sells the property.

Nine weeks before trial, Appellant opened a restaurant. She testified, and Respondent concedes, the restaurant was not showing a profit at time of trial.

In addition to operating the dairy farm, Respondent is employed by Burlington Northern Railroad. The parties' 1990 income tax return shows he earned $29,016 wages that year. The document also shows $16,373 in farm income that year.

Section 452.335.1 [3] reads:

In a proceeding for ... dissolution of marriage ... the court may grant a maintenance order ... only if it finds that the spouse seeking maintenance:

(1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

(2) Is unable to support himself through appropriate employment....

■ A trial court's determination on the allowance of maintenance is discretionary; appellate review is to determine only if discretion was abused. *In re Marriage of Lewis*, 808 S.W.2d 919, 924[14] (Mo.App. 1991); *Lowrey v. Lowrey*, 633 S.W.2d 157, 160[2] (Mo.App.1982). However, if an appellate court finds the trial court abused its discretion, the appellate court is obligated to enter the judgment the trial court should have entered. *In re Marriage of Runez*, 666 S.W.2d 430, 433[7] (Mo.App.1983); *Tygett v. Tygett*, 639 S.W.2d 282, 285 (Mo. App.1982).

■ When the parties separated, Appellant moved into an apartment, where she was still residing at time of trial. The uncontradicted evidence was that her rent is $205 per month. Her utility expenses,

viewed favorably to Respondent, are $100 per month. The monthly payment on the Cadillac which the decree requires her to pay is $364.56. Her monthly expenses also include automobile insurance, groceries, clothing and medical care.

To open the restaurant she was operating at time of trial, Appellant had to buy fixtures and furniture. She obtained part of the funds for them by canceling her life insurance. She also used her share of the parties' income tax refund. She still owed some $8,000 on these items at time of trial.

Appellant insists the uncontradicted evidence demonstrates she is entitled to maintenance in that she lacks sufficient property to provide for her reasonable needs and is unable to support herself through appropriate employment. We agree.

So far as the record shows, the 35-acre tract awarded Appellant produces no income and is encumbered by a lien of some $13,000. The "Bonnini" note produces only enough income to pay the attendant debt assigned Appellant. The Cadillac and other personal property awarded Appellant obviously produce no income. Even if Appellant collects from Respondent the $21,150 awarded her by the decree, the interest she can earn on that sum is patently insufficient to meet her reasonable needs. She is not obliged to consume that asset to be eligible for maintenance. *Whitmore v. Whitmore*, 732 S.W.2d 572, 574 (Mo.App. 1987); *Fausett v. Fausett*, 661 S.W.2d 614, 617[3] (Mo.App.1983). While she may eventually be able to support herself if her restaurant succeeds, it had not shown a profit at time of trial and she owed about $8,000 in start-up costs.

Respondent correctly points out that a spouse seeking maintenance has an affirmative duty to seek full-time employment. However, the uncontradicted evidence was that the only kind of work Appellant had ever done was milking and farm chores. The record is barren of any evidence of job opportunities for a 52-year-old female farmhand. Furthermore, Respondent testified, "[Appellant] wouldn't know how to

**3.** References to statutes are to RSMo Cum.Supp. 1991.

run a baler or a haybine or nothing." There is no evidence Appellant has any technical training or trade skills, or is otherwise qualified for any particular job.

The cases cited by Respondent where a trial court's denial of maintenance was upheld on appeal are too dissimilar to apply here. In *Lewis,* 808 S.W.2d at 921, 924, the wife had been employed as chief medical technologist at a hospital before the marriage and received "substantial" assets in the dissolution. In *McDonough v. McDonough,* 762 S.W.2d 827 (Mo.App.1988), the wife moved to another state after the separation and swiftly found employment. Additionally, the trial court "abundantly" provided for her in the property distribution. *Id.* at 829–30. In *Featherston v. Featherston,* 710 S.W.2d 288 (Mo.App.1986), the wife worked as a commercial artist before the marriage and conceded she could obtain full-time employment and support herself, but wanted instead to pursue a graduate degree in architecture. *Id.* at 289, 291–92.

The circumstances here are analogous to *Johnson v. Johnson,* 819 S.W.2d 391 (Mo. App.1991). There, in dissolving a 20–year marriage, the trial court awarded the wife marital property totaling $71,000 and maintenance in gross of $16,800, but denied permanent maintenance. The Eastern District of this Court held permanent maintenance should have been awarded, pointing out there was no evidence that the wife had employment available to her and no evidence of the compensation she could earn. *Id.* at 393. The evidence showed only that she might be able to obtain part-time bookkeeping at approximately the minimum wage. *Id.* The Eastern District modified the decree to provide for maintenance of $700 per month. *Id.* at 394.

*In re Marriage of May,* 703 S.W.2d 61 (Mo.App.1985), produced a similar result. Upon dissolving a 23–year marriage, the trial court awarded the wife no maintenance. Branding that ruling erroneous, this Court noted the only evidence of the wife's employability was that she might be able to work part-time as a seamstress. However, it was undisputed that she would be unable to fully support herself through employment, and her property was insufficient to meet her reasonable needs. This Court modified the decree by awarding the wife maintenance of $350 per month. *Id.* at 62–63.

Here, we have a 31–year marriage, a 52–year-old wife, and a husband who, according to the 1990 income tax return, earned wages of $29,016 and farm income of $16,373, a total of $45,389. At trial, Respondent testified his gross pay from the railroad is $1,300 every two weeks. This amounts to $33,800 annually, so it appears Respondent's 1991 wages were greater than his 1990 wages.

Respondent argues that requiring him to pay maintenance would be tantamount to compelling him to subsidize Appellant's business exploits. We disagree. It appears Appellant is making the best effort she can to become self-supporting, given her age and lack of job skills. On the record here, we hold Appellant meets the requirements for maintenance and the trial court abused its discretion in denying maintenance.

In determining the amount of maintenance Appellant should receive, we have carefully considered the factors listed in § 452.335.2. Viewing the evidence favorably to Respondent, as we must, we hold Appellant should receive maintenance of $350 per month, and it should be modifiable. § 452.335.3. Thus, if Appellant becomes self-supporting, modification is available to Respondent. § 452.370.

Appellant's point II, the only one not yet considered, complains about the trial court's disposition of Respondent's Burlington Northern Railroad pension.

The decree, as we comprehend it, awards the pension to Respondent, but provides Appellant is "awarded that portion ... vested & allocated by railroad regulations to spouses." Appellant asserts this was error in that "there was no evidence adduced at trial of the valuation and specific benefits of the pension."

The only evidence either party chose to present to the trial court regarding the pension was the testimony of Respondent

under questioning by his lawyer. We gather from that testimony that Appellant will receive benefits under Respondent's pension when she reaches age 65, regardless of the outcome of the dissolution action, while Respondent has the option of taking reduced benefits at age 60 or full benefits at age 62. The amount each party will receive is not shown.

Appellant's failure to present any evidence to the trial court about Respondent's pension is unexplained in the record.[4] Appellant's lawyer took Respondent's deposition three months before trial. During the deposition, Respondent revealed he had worked for the railroad 28 years and had a pension. Appellant thus had ample time to obtain information about the pension before trial.

It may be that Appellant, after investigation, shared Respondent's belief that her rights in his pension were fixed by law and there was nothing for the trial court to decide. This is inferable from a "Motion for Reconsideration" filed in the trial court by Appellant after entry of the decree. In that motion, Appellant complained about values placed on real and personal property by the trial court, but made no mention of the pension.

In any event, it is evident the pension was not an issue in the trial court. Now, Appellant complains that the trial court erred in its disposition of the pension "without having the benefit of the present cash value and a detailed explanation of the spousal benefits." Appellant does not indicate who should have supplied that data to the trial court.

*Bidstrup v. Bidstrup*, 750 S.W.2d 712 (Mo.App.1988), cited by Appellant, does not aid her. There, neither party had income from employment. In dividing the marital property, the trial court awarded the husband *all* his pension benefits, but placed no value on them. There was no evidence as to whether the pension included any spouse rights. On appeal, the wife maintained she was awarded inadequate maintenance.

Resolution of this issue depended on the value of the marital property awarded each party, as each could invest such assets and thereby realize income. Without knowing the value of the pension, the appellate court was unable to determine whether the trial court properly exercised its discretion in dividing the marital property. Additionally, there was no evidence regarding the husband's living expenses. The property and maintenance awards were reversed and the case was remanded with directions to take evidence about the pension and the husband's living expenses and enter new orders regarding maintenance and division of property.

Here, Appellant's points regarding the division of marital property presented nothing for review. Moreover, the trial court awarded Appellant the portion of Respondent's pension purportedly allocated by railroad regulations to spouses. Neither in the trial court nor here has Appellant endeavored to show any unfairness or injustice in that apportionment.

■ Appellant bears the burden of demonstrating error. *State ex inf. Ashcroft, ex rel. Plaza Properties, Inc. v. City of Kansas City*, 687 S.W.2d 875, 876[2] (Mo. banc 1985). She has failed to do so in regard to the pension. Point II is denied.

A final item, unaddressed by the parties, requires attention. Although the decree purports to award marital real estate to each party, the decree fails to set forth the legal descriptions of the properties. On remand, the decree should be amended to include the descriptions. *Halbrook v. Halbrook*, 740 S.W.2d 687, 690[6] (Mo.App. 1987); *Fields v. Fields*, 584 S.W.2d 163, 167[11] (Mo.App.1979).

The decree of dissolution of marriage is affirmed in all respects except the portion denying Appellant's prayer for maintenance, which is reversed. The cause is remanded to the trial court, which is directed to amend the decree by awarding Appellant maintenance of $350 per month, effec-

---

4. The lawyer representing Appellant in this appeal is not the lawyer who represented her in the trial court.

tive and payable beginning October 24, 1991, the date the decree was entered in the trial court, and on the twenty-fourth day of each and every month thereafter. *May,* 703 S.W.2d at 63; *Runez,* 666 S.W.2d at 434. The maintenance order shall state it is modifiable. § 452.335.3. The trial court shall also amend the decree by including the legal descriptions of each parcel of real estate affected thereby.

PARRISH, C.J., concurs.

SHRUM, J., files separate opinion concurring in part and dissenting in part.

SHRUM, Judge, concurring in part and dissenting in part.

I agree with the principal opinion in every particular but one. I respectfully dissent from the action this court takes in establishing the amount of the maintenance award.

I have no quarrel with the general proposition that this court, pursuant to Rule 84.14, has authority to enter an award of maintenance. However, I do not believe the rule and the cases that apply it require us to determine the amount of maintenance under all circumstances.

The principal opinion contains a clear exegesis of § 452.335 as it applies to the facts of this case. With this opinion in hand, the trial court would have ample guidance in fashioning an appropriate maintenance award.