Dixie R. SALSBURY, Appellant,

v.

Fred Roger SALSBURY, Respondent.

No. WD 46191.

Missouri Court of Appeals,
Western District.

Feb. 23, 1993.

**42**

Grace S. Day, St. Joseph, for appellant.

Roger M. Prokes, Maryville, for respondent.

Before FENNER, P.J., and TURNAGE and KENNEDY, JJ.

KENNEDY, Judge.

Husband and wife were a farm couple who had been married 42 years. Wife was 16 years old and had completed the tenth grade when she married husband in 1949. At the time of trial of this legal separation proceeding, wife was 59 years old. She had assisted her husband in their farming operation throughout the marriage. They have five living adult children; a sixth child, a daughter, had recently died in an automobile accident.

Husband in 1990 moved out of the family home and moved in with his aged mother, who lived on another farm in the vicinity. He took up with a widowed lady who lived nearby. Husband and the lady were seen together at various places, and had taken a couple of out-of-state pleasure trips together. They had occupied the same hotel room on one of these trips, but both denied any sexual impropriety. Husband testified he was only neighboring. Husband once became indignant when wife "behaved ugly" upon encountering him and his neighbor together at a store. He went to wife's house. An altercation ensued and

wife struck husband with a piece of Tupperware. He shook her, breaking her glasses.

The court found that all the property of the parties was marital property, and that it should be divided equally between them. The court awarded to husband property valued at $197,441.61, net of indebtedness of $161,123. The property consisted principally of two farms, and farm equipment.

The court awarded to wife property—including the 160-acre farm where wife lived, and where she and husband had lived together before he moved out in 1990—of the value of $123,830.97. The farm was valued at $96,000, and under the decree was to be unencumbered when given to wife.

To arrive at equality in the distribution of property, the trial court ordered the husband to pay wife, in addition to the property allocated to her, the sum of $36,805.32. However, the court gave husband a credit for $16,112 "for debt service (10% of indebtedness)." This left a balance of $20,693.32 to be paid by husband to wife.

■ Wife first complains that she was awarded no maintenance. Wife is a 59-year-old woman who has spent her adult life as a farm wife. With her son, Roger, she has been conducting a dairy operation on the farm where she lives. This operation has been netting her about $500 per month—her only income—but son Roger wants to get out of the dairy business and wife is not able to do the heavy lifting required by this operation. Her estimate of her monthly average expenses amounts to $2,552.90.

Husband in his brief says the property set over to wife would generate income of $9,370 per annum, or $781 per month, by renting out the land and the grain storage facilities. He suggests she could get a 40-hour-per-week minimum wage job and earn $8,840 per year. While wife might earn some money for her labor, it is very speculative, and not much value can be placed on her earning prospects. She has never worked off the farm. She lives some distance from town. She has a bladder

difficulty which will sooner or later require surgery, and a lump in her breast which is kept under medical surveillance. She has completed the tenth grade in school. Even if the farm and the grain storage facilities are leased, which husband contends wife ought to do, the farm would not manage and maintain itself. Wife's personal attention and work would be required to manage and maintain the farm.

Husband for the respective years 1988, 1989, and 1990 had net farm income of $24,434, $13,158 and $27,804. His "cash flow" for those years (i.e., gross receipts minus current expenses plus depreciation) were, respectively, $41,005, $42,144, $46,-022.[1] A carry forward net operating loss deduction keeps him from paying any income tax. In assessing husband's ability to pay, however, one must take into account the principal payments husband must make on his indebtedness, which do not appear on the income tax returns, and also the anticipated reduction in income caused by splitting off the 160–acre farm which was awarded to wife.

Wife's situation is similar to the facts encountered in two previous cases, *In re Marriage of May*, 703 S.W.2d 61 (Mo.App. 1985), and *In re Marriage of Swofford*, 837 S.W.2d 560 (Mo.App.1992). In *May*, the wife had not worked during her twenty-three year marriage and her employment prospects consisted of possibly working part-time as a seamstress. The appellate court reversed the order denying maintenance. In *Swofford*, the wife had not worked during the thirty-one year marriage except for a brief attempt to run a store. While she continued to try to support herself, given her age and lack of job skills the court found that the trial court abused its discretion by denying maintenance.

Taking into account the factors required to be taken into account in fixing spousal maintenance, section 452.335, RSMo Supp. 1992, the court erred in denying maintenance to wife. Husband should pay her maintenance of $300 per month, retroactive to the date of the decree.

■ Second, wife complains of the court's awarding husband, as a part of the marital property distribution scheme, a credit of 10 percent of his indebtedness as "debt service," and deducting that amount from the amount husband was to pay to wife to equalize the awards as between the parties. There is no evidence to support this "debt service" discount, nor can we accept husband's attempted rationalization of the deduction. The court no doubt had in mind the interest which husband would have to pay to the lender till the loan was paid—but husband would have the use of the money during the time the loan was unpaid, or he might pay off the loan at once and pay no interest on it. The reduction of $16,112 is to be restored, so that the equalizing amount to be paid to wife by husband is $36,805.32.

■ Wife complains that the court erred in its valuation of husband's farm machinery. She contends wife's evidence was the more reliable, which placed a higher value on the farm machinery than husband's evidence. The trial court, however, is the arbiter of credibility, and the court's valuation is supported by the testimony of a qualified expert appraiser. *See In Re Marriage of Lewis*, 808 S.W.2d 919 (Mo.App. 1991). We find the trial court was within its discretion in valuing the farm machinery as it did.

■ Wife complains of the court's denial of her attorney's fees. Wife will have sufficient moneys from the marital estate to pay her own attorney's fees; her cash position will be better than husband's. The trial court has broad discretion in awarding attorney's fees. *Mehra v. Mehra*, 819 S.W.2d 351 (Mo. banc 1991). We find no reversible error in the court's denial of wife's attorney's fees.

---

1. Depreciation is not, of course, a phantom deduction. It is an economic reality, but it is not a year by year drain of cash, and—for our present purpose—is not to be treated like current out-of-pocket expenses. The owner is left with a good deal of flexibility about the replacement or the repair of machinery, and it is not uncommon that machinery will be used for many years after its cost has been recovered.

The judgment as modified herein is affirmed and this cause is remanded to the circuit court. On remand, the court shall modify the judgment by awarding maintenance to the wife of $300 per month beginning on the date of the original decree. The court shall eliminate any reference to a credit of $16,112 to the husband for debt service and shall award the wife $36,805.32 to be paid by the husband. Costs on this appeal to be paid by the husband.

All concur.